# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO: 13-80054-CR-MARRA(s)(s)(s)

**UNITED STATES of AMERICA,**
        **Plaintiff,**

    **v.**

**TARA JO MOORE,**
        **Defendant.**
_____ /

## DEFENSE MOTION TO SUPPRESS
## PHYSICAL EVIDENCE OBTAINED FROM FACEBOOK

The defendant, Tara Jo Moore, by and through counsel, pursuant to Federal Rule of

Criminal Procedure 12(b) and Rule 41, respectfully files this Motion to Suppress Physical

Evidence asking the Court to suppress all items obtained by the government from Facebook

pursuant to two (2) search warrants dated June 7, 2013 and February 26, 2014, because the

applications in support do not contain sufficient probable that the items sought are

instrumentalities of the crime or upon search are likely to contain evidence of criminal activity,

nor do the warrants comply with the particularity requirement guaranteed by the 4th Amendment,

and as grounds in support would state;

### I.    History of the Investigation;

In July, 2012, the National Center for Missing and Exploited Children (NCMEC)

forwarded a Cyber Tip Report to agents identifying a Backpage ad depicting an unknown white

female, utilizing telephone number 305-900-9369.  The ad was reported to Backpage.com

depicting a minor under the age of 18.  NCMEC identified an internet protocol (I.P.) address and

1

email address associated with the ad.  The email address, Snowbunny561@hotmail.com, was queried against social networking sites such as Facebook and Myspace by NCMEC.  A Facebook account, "tara.moore.54379", associated with Tara Moore was located.  The government alleges that a Myspace account associated with co-defendant Dontavious Blake was also located.

In August 2012, agents interviewed juvenile T.H., in a separate investigation relating to the production of child pornography.  During that interview, T.H. is alleged to have revealed that she was a prostitute at the age of 15 with 10-15 regular clients.  T.H. told agents that she worked for a pimp only known as "Dee" who had a girlfriend known as Tara.  T.H. indicated that last time she had seen "Dee" was in the winter of 2012 in the Westgate area.  T.H. believed "Dee" lived in a duplex and had a laptop computer in the home.

In September 2012, a cooperating defendant (CD) was interviewed.  The CD reported that "Dee" was a pimp operating in Palm Beach County.  The CD had contacted T.H. (a minor child) through an ad posted on an online escort service to engage in sexual activity.  T.H. and the CD began a romantic and sexual relationship in violation of law for a lengthy period of time.  The government alleges that at some point in time, the CD discovered online ads using T.H.'s photographs, at a time when T.H. no longer worked for "Dee".

On September 25, 2012, agents conducted an undercover sting operation at a West Palm Beach hotel.  During that investigation, an undercover agent contacted an online escort ad and scheduled an outcall at the hotel.  A white female posting under the name "Jemma" arrived at the hotel and engaged in conversation related to certain sex acts with the undercover.  The escort was detained and interviewed by police.  The female, an adult, C.F. reported that she had posted ads online and that "Dante" was her driver to and from the call.  C.F. reported that a portion of the

2

proceeds from her escorting was given to "Dante".  C.F. also identified "Dante's" telephone number.  Later that evening, law enforcement stopped a vehicle matching the description given to them by C.F. and subsequently identified the driver as Dontavious Blake.  Mr. Blake was searched and a business card for "Devine Escorts" was located in his wallet.  The business card also contained the email address Snowbunny561@hotmail.com.  Agents also searched C.F.'s cellular telephone and allege they observed several text messages with "Dee" suggesting escorting activities.

To further their investigation, Agents issued a subpoena on Backpage.com for a particular ad that C.F. identified as belonging to "Dee" and requested all other ads posted by the same user or users and any ads utilizing the Snowbunny561@hotmail.com email address.  Documents received pursuant to the subpoena showed that the name Dontavious Blake was associated with the ads with a telephone number and the Snowbunny561 email address.

Later in the investigation, T.H. was shown a photograph of Dontavious Blake and identified Blake as the pimp she knew as "Dee".  T.H. now reported that Moore would answer calls from clients.  T.H. also identified Moore in a photograph as the girlfriend or wife of Blake, known to her as Tara.

**II.      The Arrest of the Defendants:**

On February 20, 2013, a complaint was filed in Case No: 13-8082-DLB, charging Tara Jo Moore and Dontavious Blake with sex trafficking of minors and conspiracy.  The affidavit in support of the arrest suggests that Blake and Moore arranged escorting activities at hotels in Palm Beach County between women that were advertised in on-line ads and men willing to pay for such services.  The Complaints alleged that the advertisements had been placed by the defendants

over the internet and meetings were coordinated using telephones.  The government alleged that at least two of the women advertised were under the age of 18 years of age.  Based on the information alleged in the complaint, the Court issued arrest warrants for Blake and Moore.  The second page of each warrant described no history of violence, weapons or drug use for either defendant and no other associates in the alleged enterprise.

On February 20, 2013, agents went to 801 West Tiffany Drive, Apartment #2, West Palm Beach, Florida, in an effort to execute the arrest of the defendants.  According to government documents, agents saw Moore arrive at the location in a vehicle and enter the residence.  Moments later Blake and Moore exited the residence and carried items from the vehicle into the residence.  Shortly thereafter, agents knocked on the door to the residence announcing their presence.  At that time, the agents ordered the defendants out of the residence and both Blake and Moore were arrested.  Both defendants were arrested outside the residence.  The government claims it was necessary to re-enter the residence to: (1) conduct a protective sweep; and (2) check the welfare of the minor children.  Once inside the residence, agents observed several cellular telephones, an Apple ipad and a wireless internet router.  The government alleges that the presence of the items was somehow consistent with T.H.'s description of Blake using a telephone to post ads for prostitution on websites such as Backpage.com.

After discovering the items of interest inside the apartment, agents sought a search warrant for the 801 West Tiffany Drive, residence, in an effort to continue their search of the apartment and seize those items previously seen without a warrant and any other items of interest to their investigation.  Pursuant to the search warrant for the residence several electronic items of evidence were seized by the investigators.

III.     **The Facebook Evidence**:

During the investigation, agents issued several subpoenas on Backpage.com, for all records and advertisements relating to the user or users posting ads under certain telephone numbers and email addresses.  An additional subpoena was served on Backpage.com, looking for all records and ads relating to the user or users posting under the specific telephone number 561-907-2842.  This is a number the government believes associated with Tara Jo Moore based on a review of Palm Beach County Sheriff's Office records.  In response to that subpoena, Backpage.com provided records that identified Blake as the user posting the ads utilizing the emails Divinehiring@hotmail.com and Snowbunny561@Hotmail.com.

The government alleges that they did a query on Facebook for telephone number 561-907-2842, which revealed the same Facebook account, "tara.moore.54379", which also is alleged to be associated with email address snowbunny561@hotmail.com.  The government alleges that a review of the profile for that Facebook account, displays Moore alongside  a vehicle and listed employment information as "boss lady" at "Tricks R us".  The government alleges that a preservation request was submitted to Facebook on February 21, 2013 for the user account, "tara.moore.54379", identified in Facebook case number 200835, pending issuance of a search warrant.

On February 26, 2013, the government applied for a search warrant seeking to search the entire Facebook account "tara.moore.54379", claiming that law enforcement had probable cause to believe that the Facebook account was an instrumentality of a crime, specifically a violation of 18 U.S.C. §1591(a), and requested Court authorization to search a treasure trove of material associated with all activity on this Facebook account.  The defendant believes this generally over

broad request resulted in the violation of the defendant's 4th Amendment Rights but also the production of facebook activity of third parties.[1]  The June 7, 2013, application and search warrant contains Attachment A, which identifies the property to be search, specifically the Facebook account.  The warrant and application also contains Attachment B, which describes the overly broad and general information the government seeks from Facebook.  Section II, details the information to be seized by the government.  In this section, the government general states that they seek to seize "all information described above in Section I, that constitutes fruits, evidence and instrumentalities of violations of 18 USC §2252, involving Hernandez Jesus Banks, since June 2012, including for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Use of the Facebook account as it was accessed or utilized in close temporal proximity to the use of peer to peer software used to search for, preview, and download images and videos of child pornography.

(b) Records relating to who created, used or communicated with the Facebook account associated with email address, banks_hernandez@yahoo.com, including records about their identities and whereabouts.

It appears the government provided incorrect information within the application as contained in the application dated June 7, 2013.  There are no facts in this section that detail that probable cause exists for each item sought and how those facts suggest probable cause exists for the obtaining and searching of those items.

---

[1] A copy of the search warrant affidavit, including Attachment A, property to be searched and Attachment B, particular things to be seized is attached to this motion.

On June 7, 2013, a search warrant was signed by United Magistrate Judge James M. Hopkins at 3:57pm, commanding that information associated with the Facebook account "tara.moore.54379", stored at the premise controlled by Facebook be searched.  The warrant further ordered that execution of this warrant was to be completed on or before June 21, 2013.

The government alleges that the June 7, 2013, search warrant was served on Facebook that same day.  The government further alleges that, in response Facebook only provided data from the date of the preservation request (February 21, 2013) through the date the search warrant was served (June 7, 2013).

It appears that, in response to the manner in which Facebook responded to the government's search warrant, the government applied for and obtained a second search warrant for the same Facebook account, "tara.moore.54379".  This application was submitted to United States Magistrate Judge David Lee Brannon on February 26, 2014, and signed authorizing a search on the same day.[2]

A review of the second application for warrant proves that the only addition to the probable cause portion of the application in support for the warrant is that the government identifies a female by the name of Heaven Siegel, who is listed as a "friend" to the "tara.moore.54379", Facebook account.  The government also details a December 2013 interview with Heaven Siegel reporting that she worked as prostitute for Blake and Moore.  In this second

---

[2] A copy of the February 26, 2014, search warrant and application is attached to this motion, including similar Attachments (A) & (B) included within the first search warrant.  In the second search warrant application, it appears the government changed section II. Information to be Seized by the Government, in that they make the same general request for information, however they ask for data from a specific time period related to Blake and Moore and not Mr. Hernandez.

application for search warrant, the government makes the same general conclusion that they

believe relevant material regarding Blake and Moore can be found in the Facebook account.  In

response to the warrants issued, Facebook provided overwhelming amount of information from

the "tara.moore.54379", Facebook account.

**MEMORANDUM OF LAW AND ARGUMENT**

The proposed search warrants are structured so that they identify two categories of

information: (1) information to be disclosed by the Providers to the government under 18 U.S.C.

§ 2703, and (2) information to be seized by the government.  The first section of each proposed

warrant orders the Provider to disclose to the government the information, including the content

of communications, for the defendant's facebook account and identifiers associated with the

facebook account stored by the Provider.  The second section of each proposed warrant allows

seizure of "all information described in Section 1, that constitutes fruits, evidence and

instrumentalities of violations of 18 USC §1951 and §1954.  This general directive for all

information by the warrants violates the 4th Amendment in several respects.  First, the

government provides no probable cause that the items they seek to obtain and search are related

in any respect with crime charged, were used to facilitate the crime or upon search are likely to

produce evidence of criminal activity.  Second, the search warrants as directed are of such a

general nature that they violate the particularity requirement contained within the 4th

Amendment.

I.    **The Stored Communications Act:**

The applications for search warrants submitted by the government seek authorization to

obtain and search electronic communications from Facebook, a provider of electronic

8

communications services, pursuant to the Stored Communications Act, specifically, 18 U.S.C. § 2703(a); (b)(1)(A) and (c)(1)(A). Under 18 U.S.C. § 2703(a), a government entity may require a provider of electronic communication services to disclose the contents of a wire or electronic communication that is in electronic storage for 180 days or less pursuant to a warrant issued in compliance with the Federal Rules of Criminal Procedure. For communications stored for more than 180 days, the statute authorizes a government entity to require a provider of electronic communication services to disclose the contents of the communications under the procedures outlined in subsection (b). Section 2703(b)(1)(A), authorizes a government entity to require a provider of remote computing service to disclose the contents of any wire or electronic communication without notice to the subscriber or customer if the government obtains a warrant issued pursuant to the Federal Rules of Criminal Procedure. Section 2703(c)(1)(A) authorizes a government entity to require a provider of electronic communication service or remote computing service to disclose records or other information pertaining to a subscriber or customer if the government obtains a warrant issued pursuant to the Federal Rules of Criminal Procedure.

II.     **The 4th Amendment and its Application to the Stored Communications Act:**

The Fourth Amendment of the United States Constitution guarantees the right of citizens against unreasonable searches and seizures. The Fourth Amendment provides, the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

9

The fundamental purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.  However, not all government actions are invasive enough to implicate the Fourth Amendment.  A search is defined in terms of a person's "reasonable expectation of privacy" and is analyzed under a two-part test first set out *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).  This standard involves two discrete inquiries: First, has the individual manifested a subjective expectation of privacy in the object of the challenged search?  Second, is society willing to recognize that expectation as reasonable?

Although the Supreme Court has not addressed whether there is reasonable expectation of privacy in electronic communications such as email, the Sixth Circuit in *United States v. Warshak*, 631 F.3d 266, 282-88 (6th Cir.2010),  has extended Fourth Amendment protection to emails stored with third-party electronic communication service providers.  The court held that the reasonable expectation of privacy for communication via telephone and postal mail, recognized by the Supreme Court respectively in *Katz* and *Jacobsen*, extends to emails stored with third parties, bringing stored emails within the protection of the Fourth Amendment.  *Id*. at 285-86.   In *Warshak*, the court addressed whether law enforcement officers violated the defendant's Fourth Amendment rights by obtaining the content of the defendant's emails from his internet service provider without a warrant.  In analyzing the issue and reaching its decision, the *Warshak* court reasoned that emails are analogous to phone calls and letters, and an internet service provider is the functional equivalent of a telephone company or the post office, thereby entitling email communications to the same strong Fourth Amendment protections traditionally afforded to telephone and letter communications.  *Id.* at 352-53.   "Given the fundamental

10

similarities between email and traditional forms of communication, it would defy common sense to afford emails lesser Fourth Amendment protection." *Id*. at 285.

Based on this analysis, the court held that "a subscriber enjoys a reasonable expectation of privacy in the contents of emails `that are stored with, or sent or received through, a commercial [internet service provider]". *Id*.  The government may not compel a commercial internet service provider to turn over the contents of a subscriber's emails without first obtaining a warrant based on probable cause.   Therefore, because the government failed to obtain a warrant, its agents violated the Fourth Amendment when they obtained the contents of the defendant's emails.  The court also observed that "the mere ability of a third-party intermediary to access the contents of a communication cannot be sufficient to extinguish a reasonable expectation of privacy".  *Id*.

The Tenth Circuit, found the rationale set forth in *Warshak* persuasive and therefore held that an individual has a reasonable expectation of privacy in emails stored with, sent to, or received thorough an electronic communications service provider.  *In the Matter of Applications for Search Warrants for Information Associated with Target Email Accounts/Skye Accounts*, 2013 WL4647554 (D.Kan.)).   Accordingly, the Fourth Amendment protections, including a warrant "particularly describing" the places to be searched and communications to be seized, apply to a search warrant seeking such communications.  *Id*.  A warrant seeking stored electronic communications such as emails therefore should be subject to the same basic requirements of any search warrant: *it must be based on probable cause, meet particularity requirements, be reasonable in nature of breadth, and be supported by affidavit*.  *Id*.

Although the warrants at issue in this case go well beyond the limits of seeking to obtain simply email communications, the same 4th Amendment dictates must be applied as well.  The

government in this case seeks to obtain a treasure trove of information that is otherwise private and protected by the Fourth Amendment.  Because the government did not provide probable cause that the items to be search are relevant to the crime charge or that upon searching would likely provide evidence of criminal activity, the warrants should be found in violation of the 4th Amendment.  More importantly, because the warrants obtained are of such a general nature they do comply with the particularity requirement of the 4th Amendment.

### III.   Fourth Amendment Requirements and Analysis:

Having determined that the Fourth Amendment protections apply to warrants seeking content stored with an electronic communications service provider, the Court next must determine whether the warrants proposed by the Government meet the particularity and breadth standards imposed by the Fourth Amendment.  The warrant clause of the Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." *See 4th Amendment U.S. Constitution*.

The search warrant probable cause and particularity requirements serve two constitutional protections:  First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause.  The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity.  The second, distinct objective is that those searches deemed necessary should be as limited as possible.  Here, the specific evil is the "general warrant" abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings.  The warrant accomplishes this second objective by requiring a "particular

description" of the things to be seized. *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The Fourth Amendment thus categorically prohibits the issuance of any warrant except one particularly describing (1) the place to be searched, and (2) the persons or things (or in this case electronic communications) to be seized. The particularity requirement first mandates that warrants describe with particularity the place to be searched. "The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched. *United States v. Lora–Solano*, 330 F.3d 1288, 1293 (10th Cir.2003) (quoting *United States v. Pervaz*, 118 F.3d 1, 9 (1st Cir.1997)).

In the digital realm, whether a description of a place to be searched is sufficiently particular is a complicated question because of the differences between the physical and digital worlds. *Nichole Friess, When Rummaging Goes Digital: Fourth Amendment Particularity and Stored E–Mail Surveillance*, 90 Neb. L.Rev. 971, 987 (2012). The manifest purpose of the Fourth Amendment particularity requirement is to prevent general searches. *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). By limiting the authorization to search the specific areas and things for which there is probable cause to search, the particularity requirement ensures that the search will be carefully tailored to its justifications, and will not become a wide-ranging, exploratory search prohibited by the Fourth Amendment. *Id.* Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a

13

stolen lawnmower may be found in a garage will not support a warrant to search an upstairs

bedroom, probable cause to believe that undocumented aliens are being transported in a van will

not justify a warrantless search of a suitcase.  *Id*. at 84-85.

The purpose of the particularity requirement is not however limited to the prevention of

general searches.  A particular warrant also provides assurances to the individual whose property

is searched or seized of the lawful authority of the executing officer, the officer's need to search,

and the limits of the officer's power to search.  *Groh v. Ramirez,* 540 U.S. 551, 561, 124 S.Ct.

1284, 157 L.Ed.2d 1068 (2004).  In addition to the places to be searched, the warrant must also

describe the things to be seized with sufficient particularity.  This is to avoid a "general

exploratory rummaging of a person's belongings," and was included in the Fourth Amendment as

a response to the evils of general warrants.  *United States v. Campos*, 221 F.3d 1143, 1147 (10th

Cir.2000).  First, the description of the things to be seized must be "confined in scope to

particularly described evidence relating to a specific crime for which there is demonstrated

probable cause."  *Mink v. Knox*, 613 F.3d 995, 1010 (10th Cir.2010).  Second, a warrant must

describe the things to be seized with sufficiently precise language so that it informs the officers

how to separate the items that are properly subject to seizure from those that are irrelevant.

*Davis v. Gracey*, 111 F.3d 1472, 1478–79 (10th Cir.1997).  This has been stated another way: as

to what is to be taken, nothing is left to the discretion of the officer executing the warrant.  A

warrant is overly broad if it does not contain sufficiently particularized language that creates a

nexus between the suspected crime and the things to be seized.  *Campos*, 221 F.3d at 1147.

In *United States v. Carey*,  172 F.3d 1268, 1275 (10th Cir.1999)(citing *Raphael Winick,*

*Searches and Seizures of Computers & Computer Data*, 8 Harv. J.L. & Tech. 75, 104 (1994)),

14

the Tenth Circuit applied the particularity requirement to a warrant authorizing the search of computer files.  The court noted that comparing computers to closed containers or file cabinets may be inadequate and lead to oversimplification of a complex area of Fourth Amendment doctrines.  *Id.*  Since electronic storage is likely to contain a greater quantity and variety of information than any previous storage method, computers make tempting targets in searches for incriminating information.  It proposed that a court could alternatively acknowledge that computers often contain "intermingled documents."   Under this "intermingled documents" approach, law enforcement must engage in the intermediate step of sorting various types of documents and then only search the ones specified in a warrant.  The court stated that the magistrate judge should then require officers to specify in a warrant what type of file is sought. *Id.*

In *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir.2009), the Tenth Circuit recognized that the Fourth Amendment's warrant particularity requirement has increased importance with respect to electronically stored information.  "The modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important.  Because of this, our case law requires that "warrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of material". *Id*. (quoting *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir.2005)).

In *Otero*, the defendant, a former postal carrier, was indicted for offenses in connection with alleged theft of credit cards, personal identification numbers, and billing statements from

residents along her delivery route.  The government obtained a search warrant for her residence.
The warrant contained two subsections: "Items to be Seized" and "Computer Items to be Seized."
Each paragraph under the first section limited the search to evidence of specific crimes or
evidence pertaining to specific persons along the defendant's delivery route.  Each paragraph
under the second section, however, had no limiting instruction whatsoever.  The court found a
reading the computer items paragraphs of the warrant alone showed that they each authorize a
search and seizure of "[a]ny and all" information, data, devices, programs, and other materials
with no explicit or even implicit incorporation of the limitations of the first section.  *Id*.  The
computer-related paragraphs did not refer to the rest of the warrant.  The court concluded that the
presence of limitations in the first section but absence in the second suggested that the computer
searches were not subject to those limitations.  *Id*.  The court further rejected the government's
argument that under a natural reading of the warrant the portion authorizing the computer search
was limited to information pertaining to the alleged mail fraud and credit card theft.  *Id*.  It
concluded that the paragraphs of the warrant authorizing the computer search were subject to no
affirmative limitations.

      Recognizing that "practical accuracy rather than technical precision controls the
determination of whether a search warrant adequately describes the place to be searched," the
Tenth Circuit concluded that the warrant failed to describe the items to be seized with either
"technical precision" or "practical accuracy," because the section of the warrant pertaining to
seizure of the computer items did not limit the search to evidence of specific crimes or to specific
persons on the defendant's delivery route.  *Id*.

The same can said of the warrants obtained by the government in this case.  The warrants seek "any and all information" related to a variety of the items found within the defendant's Facebook account.  There is nothing within the application submitted by the government that connects those items to crime or suggest that upon search, those items are likely to show evidence of criminal activity.

Although there are many cases addressing the Fourth Amendment's particularity requirements as to computer searches, there is little guidance on the particularity that should be applied to search warrants seeking email communications stored in an account provided by an electronic communications service provider.  *In re Search Warrants for Info. Associated with Target Email Address*, Case Nos. 12–MJ8119–DJW and 12–MJ–8191–DJW, 2012 U.S. Dist. LEXIS 138465, 2012 WL 4383917 (D.Kan. Sept.21, 2012).   Due to the sealed nature of applications for search warrants, few reported opinions exist addressing the factors or standards that should be used in determining whether search warrants seeking electronic communications—such as email accounts from electronic communication service providers—are sufficiently particular under the Fourth Amendment.

The Tenth Circuit has previously denied an application for search warrant authorizing an electronic communications service provider, Yahoo!, to disclose the content of all emails and other account-related information without limitation as overly broad and as a result in violation of the Fourth Amendment.   *In re Search Warrants for Info. Associated with Target Email Address*, Case Nos. 12–MJ8119–DJW and 12–MJ–8191–DJW, 2012 U.S. Dist. LEXIS 138465, 2012 WL 4383917 (D.Kan. Sept.21, 2012).  In that case, a request to search "the contents of all emails associated with the account" as well as "all records or other information ... including

17

address books, contact and buddy lists, calendar data, pictures, and files" was denied based on the same rationale as set forth above. *Id.* at 3-4.

Since then, the Tenth Circuit has entered a similar ruling in *United States v. Barthelman*, Case No. 13–10016–MLB, 2013 U.S. Dist. LEXIS 107123 at 31, 2013 WL 3946084 (D.Kan. July 31, 2013). In *Barthelman*, law enforcement officers applied for search warrants directed to Yahoo! and Apple, authorizing the search of email accounts maintained by Yahoo and Apple for, amongst other things, "the contents of any and all emails stored in the subscriber's ... account from November 1, 2011 to the present day." *Id.* at 4. The Yahoo! search warrant was dated May 3, 2012 and the Apple search warrant was dated August 21, 2012. The defendant challenged the warrants as unsupported by probable cause and overly broad. Judge Monti Belot found that the warrants were supported by probable cause, but granted the motion to suppress the Yahoo! and Apple warrants on the basis that "the warrants were overbroad and not as particular as the Fourth Amendment requires." *Id*. at 31. The fact that the warrants were limited to specific accounts, to a specific time frame of six months, and to "evidence of communications used in furtherance of the violation of the laws of the State of Ohio" was not sufficiently particular according to the Court. *Id*. at 29–30.

In, *In the Matter of the Search of Information Associated with [redacted] @mac.com that is Stored at Premises Controlled by Apple, Inc*., —F.Supp.2d—, 2014 WL 945563 (D.D.C. March 7, 2014), the Court expressed increasing concerned about the government's applications for search warrants for electronic data. In essence, the government's applications ask for the entire universe of information tied to a particular account, even if it has established probable cause only for certain information. The Court, in an effort to ameliorate the problem and bring

18

the warrants in line with the Fourth Amendment, has issued "Secondary Orders" to accompany search and seizure warrants for electronic records. *Id*. These "Secondary Orders" explicitly require that contents and records of electronic communications that are not relevant to an investigation must be returned or destroyed and cannot be kept by the government. *See, e.g., In the Matter of the Search of Information Associated with [ Redacted] That is Stored at Premises Controlled by Yahoo! Inc.*, 13 M.J. 728, [#4] (D.D.C. Sept. 25, 2013) (sealed) (Facciola, M.J.) ("All contents and records that the United States government determines are not within the scope of Attachment B(II)(A), (B), and ©) shall be either returned to Yahoo!, Inc., or, if copies, destroyed."). The Court went on to say that, without such an order, this Court is concerned that the government will see no obstacle to simply keeping all of the data that it collects, regardless of its relevance to the specific investigation for which it is sought. *See In the Matter of the Search of Information Associated with the Facebook Account Identified by the Username Aaron. Alexis That Is Stored at Premises Controlled by Facebook, Inc.*, ——F.Supp.2d ——, ——, 2013 WL 7856600, at 7 (D.D.C. Nov. 26, 2013) (Facciola, M.J.) (hereinafter " Facebook Opinion ").

That, however, has not been the extent of the Court's concerns. In the Court's November 2013 Facebook Opinion, the Court raised serious concerns about the government's use of the two-step procedure under Rule 41 of the Federal Rules of Criminal Procedure. *See Facebook Opinion*, —— F.Supp.2d at ——, 2013 WL 7856600, at 6; ("Under that Rule, a warrant 'may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or other information consistent with the warrant.' ") (citing Fed.R.Crim.P. 41(e)(2)(B)).

19

Under this approach, "the initial section of the warrants authorizing the electronic communications service provider to disclose all email communications (including all content of the communications) and all records and other information regarding the account is too broad and too general." *See also, In re Applications for Search Warrants for Information Associated with Target Email Accounts/Skype Accounts*, Nos. 13–MJ–8163, 13–MJ–8164, 13–MJ–8165, 13–MJ–8166, 13–MJ–8167, 2013 WL 4647554, at 1;(D.Kan. Aug. 27, 2013); (" In re App."). The Court noted that, despite the Court raising its concerns and urging the government to adopt a different approach, the government continues to ask for all electronically stored information in e-mail accounts, irrespective of the relevance to the investigation.

It appears from a review of the warrants in this matter, the government has sought to obtain "any and all" information related to the Facebook account of the defendant without specifying how those items are related to the crime or upon search will likely provide evidence of criminal activity in their application.

## CONCLUSION

Defendant Moore suggests the warrants proposed by the government violate the Fourth Amendment.  First, the initial section of the warrants authorizing the electronic communications service provider to disclose all communications (including all content of the communications), and all records and other information regarding the account is too broad and too general.  The warrants fail to set any limits on the  communications and information that the electronic communications service provider is to disclose to the government.  Instead, the warrants require the Provider to disclose all communications for all items in their entirety and all information about the account without restriction. Most troubling is that these sections of the warrants fail to

limit the universe of electronic communications and information to be turned over to the government to the specific crimes being investigated.

Even if the Court were to allow a warrant with a broad authorization for the content of all communications without a nexus to the specific crimes being investigated, the warrants would still not pass Constitutional muster. They fail to set out any limits on the government's review of the potentially large amount of electronic communications and information obtained from the electronic communications service providers. The warrants also do not identify any sorting or filtering procedures for electronic communications and information that are not relevant and do not fall within the scope of the government's probable cause statement.

The sections of the warrants requiring the initial disclosure by the electronic communications service provider under 18 U.S.C. § 2703, are not sufficiently particular in that they link the information to be seized to the alleged crimes.  They fail to create a nexus between the suspected crime and the related account information to be obtained and searched. The warrants order the Providers to disclose the content of all communications associated with the target account, including deleted communications, as well as all records and information regarding identification of the accounts, and other information stored by the account user, including address books, contact lists, calendar data, pictures, and files. The target accounts may contain large numbers of emails and files unrelated to the alleged crimes being investigated or for which the government has no probable cause to search and seize. The government simply has not shown probable cause to search the contents of all items sought from the accounts or for all the information requested from the Providers.  The government thus has not shown probable cause for the breadth of the warrants sought here.  The Fourth Amendment would not allow such a

21

warrant and the Court should therefore not permit a similarly overly broad warrant just because the information sought is in electronic form rather than on paper.

The warrants as currently proposed give the government virtual carte blanche to review the content of all electronic communications associated with the accounts and fail to adequately limit the discretion of the government-authorized agents executing the warrants. The absence of any limitations in the warrants on the government's review of the content of all information obtained from the Providers is in violation of the Fourth Amendment.

Respectfully submitted;
*s/; Peter T. Patanzo*
Benjamin, Aaronson, Edinger & Patanzo, PA
1 Financial Plaza, suite 1615
Fort Lauderdale, Florida 33394
(954) 779-1700 phone
(954) 779-1771 fax
ppatanzo@bellsouth.net
Counsel for Tara Jo Moore

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on CM / ECF, this 18th day of June, 2014 and served on those associated with the electronic service list.

*s/; Peter T. Patanzo*
Peter T. Patanzo, Esq.

23