UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80054-CR-MARRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

TARA JO MOORE,

    Defendant.

## MOTION TO SUPPRESS EVIDENCE AND FOR AN EVIDENTIARY HEARING

The defendant, Tara Jo Moore and her co-defendant, Dontavious Blake, are charged with sex trafficking of minors and conspiracy. Ms. Moore, through counsel, hereby moves, pursuant to Federal Rule of Criminal Procedure 12(b), to suppress items of physical evidence seized from her home on February 20, 2013, on the ground that said items were discovered and seized in violation of her rights under the Fourth Amendment to the United States Constitution. This motion is based upon the memorandum of law below, evidence to be adduced at an evidentiary hearing, post-hearing proposed findings of fact and conclusions of law, and oral argument.

## MEMORANDUM OF LAW

### I Factual Background

On February 19, 2013, a complaint was filed in Case No. 13-8082-DLB charging Dontavious Mingel Blake and Tara Jo Moore with sex trafficking of minors and conspiracy. Said complaint appended an affidavit from F.B.I. Special Agent Christina Pryor, as the case agent, in which she detailed her investigative findings as of February 20, 2013. That

1

investigation suggested that Mr. Blake and Ms. Moore arranged rendevous at hotels in Palm Beach County between young women they advertised as available for assignations and men willing to pay for same.  The investigation further suggested that advertisements had been placed by the defendants over the internet and that assignations were coordinated using telephones.  The investigation further suggested that at least two of the young women so engaged by the defendants were under 18 years old.  On the basis of the information contained in the filed complaint, the Court issued arrest warrants for Mr. Blake and Ms. Moore.  The second page of each warrant, wherein pertinent information can be detailed, described no history of violence, weapons or drug use for either defendant, and no other associates in their alleged enterprise.  The complaint and arrest warrants are attached hereto as exhibits.  No application for a search warrant was made in conjunction with the complaint and arrest warrants.

On February 20, 2013, F.B.I. Special Agents went to 801 West Tiffany Drive, Apartment 2, West Palm Beach.  They saw Ms. Moore arrive in a car and enter the residence.  They saw Mr. Blake come out of the residence with Ms. Moore, retrieve something from the car and then enter the residence.  Agents knocked on the door and announced their presence.  Mr. Blake and Ms. Moore answered the door, at which time they were ordered by the agents to come outside of the residence.  They were arrested without resistance.  Each invoked the right to remain silent and to an attorney.  Agents then entered the residence and searched it, thereafter offering two excuses for their warrantless entry: (1) to conduct a "security sweep" and (2) the defendants informed them that there were two minors alone in the apartment.  While inside the residence the agents found an Apple iPad tablet, multiple smart phones and a wireless internet router.

Having discovered items of investigative interest inside the residence, the agents returned

to Court to seek a search warrant for 801 West Tiffany Drive, Apartment 2, West Palm Beach, in order to seize and search the items they already knew from their prior search to be inside of the defendants' residence, including the Apple iPad tablet. The search warrant application is attached hereto as an exhibit.

The Apple iPad tablet was password protected to safeguard privacy interest in its contents. The government filed an *ex parte* motion under seal on March 15, 2013, under Docket No. 13-8153-JMH seeking an order from the Court compelling Apple, Inc., to enable them to bypass the password protected lock on the tablet.[1] The Court thereupon issued an order requiring Apple, Inc., to circumvent the Apple iPad tablet's security system and to provide law enforcement with encrypted data from the tablet. The motion and order are attached hereto in appendix form.

## II Argument

A.  **Dontavious Blake Has Standing To Challenge The Search Of His Residence, The Seizure Of Property From His Residence, And The Search Of Said Property, Including The Apple iPad Tablet With The Compelled Assistance Of A Third Party**

It is well-established that "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). Although the word "standing" is commonly used in discussions about whether a defendant has a legitimate expectation of privacy in a particular location or item, the issue is not analytically one of standing in the Article III sense, but rather one of Fourth Amendment doctrine. *See Rakas v. Illinois*, 439 U.S. 128, 138-40 (1978). To mount a Fourth Amendment challenge, a defendant must demonstrate that he personally enjoyed

---

1. The judicial officer who considered the motion to compel Apple, Inc., to assist the government was not the judicial officer who issued the arrest warrant and the subsequent search warrant.

a legitimate expectation of privacy in the places searched. *United States v. Padilla*, 508 U.S. 77 (1993). Tara Moore had an expectation of privacy in his residence, and the items in said residence, particularly the password protected computer tablet. *See United States v. Garcia*, 741 F.2d 363, 366 (11th Cir.1984) (holding that owners, lessees, and occupants demonstrating significant and current interest in the searched premises have an expectation of privacy) and *United States v. Andrus*, 483 F.3d 711, 718 (10th Cir. 2007) (recognizing that, for most people today, password protected computers are their most private spaces). Tara Moore has "standing" to move to suppress the results of the searches and seizures at issue in the case at bar.

> B.  The Government Cannot Meet Its Burden Of Establishing That The Entry Into The Residence Without A Search Warrant Was Proper As (1) A Security Sweep Or (2) An Emergency

The sanctity of the home is unquestionably a central concern of the Fourth Amendment. The Fourth Amendment generally prohibits warrantless entry into a person's home, whether to make an arrest or to search for specific objects. *Groh v. Ramirez*, 540 U.S. 551, 558 (2004). While a search conducted pursuant to a search warrant is presumptively valid, a search conducted without a search warrant is "*per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Law enforcement officers executing an arrest warrant at a residence without a search warrant for that residence have only a very limited right to search the premises incident to said arrest. *Chimel v. California*, 395 U.S. 752, 762-63 (1969). The burden of proving an exception to the search warrant requirement lies with the government. *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983). The

government cannot meet that burden in this case.

### 1. The Warrantless Entry Into And Search Of The Residence Was Not Objectively Justifiable Under The Strictures Of The Security Sweep Exception

The search-incident-to-arrest exception to the search warrant requirement must be narrowly construed and limited to accommodating only those interests it was created to serve. *United States v. Graham*, 638 F.2d 1111, 1114 (7th Cir. 1981). The agents claim that they entered the residence in order to conduct a security sweep. They lacked a lawful basis for doing so within the well delineated strictures of the search-incident-to-arrest exception to the requirement of a search warrant.

In *Maryland v. Buie*, 494 U.S. 325 (1990), the United States Supreme Court addressed the "level of justification . . . required by the Fourth . . . Amendment[] before police officers, while effecting the arrest of a suspect in his home pursuant to an arrest warrant, may conduct a warrantless protective sweep of all or part of the premises." *Id.* at 327. The Court, recognizing the often competing interests of the individual's expectation of privacy and the officers' safety, determined that there were two levels of protective sweeps. Concerning the first tier of protective sweeps, the court concluded that where the arrest occurs *inside* the residence, "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. Regarding the second tier of protective sweeps, the court concluded that where the arrest occurs *outside* the residence, "we hold that there must be articulable facts which, taken together with the rational inferences from

5

those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*  Thus, where an arrest is made *outside* of a home, a protective sweep of the home is not justified under *Buie* absent objectively reasonable suspicion that there is a dangerous individual in the house.  *United States v. Scott*, 517 Fed.Appx. 647 (11th Cir 2013) (unpublished) (finding that the district court erred in holding protective sweep justified incident to arrest made outside of the home absent specific and articulable facts showing an objectively reasonable belief that another individual who posed a danger to the officers was inside the home).

      Mr. Blake and Ms. Moore were arrested outside their home.  The only persons believed to be present in the residence at that time were children.  The government cannot establish specific and articulable facts showing that another individual who posed a danger to the officers was reasonably believed to be inside the home. The government cannot meet its burden of demonstrating that the search in this case came within the strictures of the security sweep exception.

      **2.    The Warrantless Entry Into And Search Of The Residence Was Not Objectively Justifiable Under The Strictures Of The Emergency Aid Exception**

      The "emergency aid" exception is derived from police officers' community caretaking function.  The Supreme Court recognized this function in *Mincey v. Arizona*, 437 U.S. 385, 392 (1978), when it brought "emergency aid" within the ambit of the limited "exigent circumstances" rule, recognizing that there may be circumstances which render the search warrant requirement impracticable.  In *Mincey*, the Court reasoned that an entry or search that would otherwise be

prohibited by the Fourth Amendment may be justified by a need to protect life or avoid serious injury. *Id*. "Under the 'emergency aid' exception, . . . 'officers may enter a home without a [search] warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent danger.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Because the "emergency aid" exception is a species of the "exigent circumstances" rule, the government bears the burden of demonstrating the "exigency" of the situation. *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002).

The "reasonableness" of a belief by law enforcement officers in the exigency of making a warrantless entry is determined "objectively" – based upon all of the circumstances at the time. *Brigham City*, 547 U.S. 398 at 404. The officers' "subjective motivation is irrelevant." *Id*. "In order for the [emergency aid] exception to apply, officers must have an objectively reasonable belief that someone inside [the residence] is 'seriously injured or threatened with such injury' and is in need of immediate aid." *United States v. Timmann*, 741 F.3d 1170, 1178 (11th Cir. 2013) (quoting *Brigham City*, 547 U.S. 398 at 403-04). In order to justify entering a home without a search warrant to render aid and assistance to children in the residence, the children must be in such extreme danger that there is a compelling need for official action and no time to secure a search warrant. *Gates v. Texas Department Of Protective And Regulatory Services*, 537 F.3d 404, 421-23 (5th Cir. 2008).

The agents had no objectively reasonable belief that children inside Ms. Moore's home were in such imminent peril that it was necessary to enter the home to rescue them. The government cannot meet its burden of demonstrating that the search in this case came within the strictures of the emergency aid exception to the search warrant requirement.

### C. The Search Warrant Was The "Fruit Of The Poisonous Tree" Of The Prior Unlawful Search And Therefore The Evidence Seized (And Searched) Pursuant Thereto Must Be Suppressed

It is axiomatic that, subject to limited exceptions, evidence seized as a result of an unlawful search must be excluded from the government's case in chief. The rule mandating suppression encompasses all indirectly derivative evidence, until the point at which the connection with the unlawful search becomes "so attenuated as to dissipate the taint." *Nardone v. United States*, 308 U.S. 338, 341 (1939). Under the Supreme Court's holding in *Wong Sun v. United States*, 371 U.S. 471, 484 (1963), all evidence that is derived directly or indirectly from unconstitutional law enforcement conduct is tainted and is thus subject to suppression as "fruit of the poisonous tree." The question when the government seeks to introduce derivative evidence is "whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come by means sufficiently distinguishable to be purged of the primary taint." *Id*. at 488. The taint of illegal conduct may be purged by showing that the evidence was also available through some independent source or by demonstrating that the causal link between the illegal conduct and the evidence is attenuated. *Id*. It is the government's burden to prove dissipation if it seeks to use such evidence. *Brown v. Illinois*, 422 U.S. 590, 604 (1975).

In *Murray v. United States*, 487 U.S. 533 (1988), the Supreme Court stated that "[t]he ultimate question" when an unlawful entry precedes the application for a search warrant "is whether the search pursuant to the warrant was in fact a genuinely independent source of the information and tangible evidence at issue here." *Id*. at 542. There are two parts to that analysis: the government must establish (1) that the search warrant affidavit, when purged of tainted

8

information gained through the initial illegal entry, contains sufficient remaining facts to constitute probable cause that the evidence sought would be found in the residence; *and*, if so, (2) that the evidence observed at the time of the illegal entry did not influence or motivate the decision to procure a search warrant. *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012). The government cannot meet its burden of establishing each of those prerequisites to admissibility.

> **1.  The Search Warrant Affidavit, When Purged Of Tainted Information, Fails To Establish Probable Cause That Evidence Or Instrumentalities Of The Charged Offenses Would Be Found At 801 West Tiffany Drive, Apartment 2, West Palm Beach**

Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. The Fourth Amendment requires that there be probable cause to search a particular place for evidence or instrumentalities of crime. *United States v. Martinelli*, 454 F.3d 1300, 1307 (11th Cir. 2006) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence *at a particular location*.") (emphasis added). Moreover, "the information supporting the government's application for a [search] warrant must show that probable cause exists at the time the warrant issues." *United States v. Bervaldi*, 226 F.3d 1256, 1263 (11th Cir. 2000). When an affidavit is attached to a search warrant application, the determination of probable cause is made strictly within the four corners of said affidavit. *Id.* at 1308.

The affidavit attached to the search warrant application in the case at bar averred the

9

following, in pertinent part, when purged of tainted information gained through the initial illegal entry (non-pertinent parts omitted):

> In August 2012, agents interviewed juvenile T.H. * * * T.H. revealed that she first engaged in prostitution at the age of 15 during the summer of 2011. * * * During that time, T.H. worked for a pimp only known to her by the nickname of 'D' . . . who drove a gray Dodge Charger. 'D's' girlfriend was a white female T.H. knew as Tara last name unknown (LNU). TARA LNU answered phones and calls for 'D' relating to prostitution and escort calls. * * * T.H. last saw 'D' in the winter of 2012 in the Westgate area driving the gray Dodge Charger. 'D' was believed to live in the Westgate area in a duplex and had a laptop computer in the home. T.H. saw photographs of herself in online escort ads believed to have been posted by 'D' at a time when T.H. no longer worked for him.
>
> In September 2012, a cooperating defendant (CD) was interviewed. * * * [T]he CD identified telephone number (561) 727-7843 as belong [sic] to 'DEE' LNU.
>
> During the evening of September 25, 2012 and the early morning of September 26, 2012, a dark gray Dodge Charger was seen arriving at a gas station . . . . Agents and law enforcement stopped the vehicle and subsequently identified the driver as Dontavious Mingel Blake.

Juvenile T.H. was interviewed again and was shown a Florida Driver and Vehicle Identification Database (D.A.V.I.D.) photograph of Dontavious Mingel Blake. . . . T.H. identified Blake as the pimp she knew as 'D' for whom she worked in 2011. * * * T.H. was also shown a D.A.V.I.D. photograph of Tara Jo Moore. . . . T.H. identified Moore as the girlfriend or wife of Blake, known to her as 'Tara.'

On February 20, 2013, agents observed a gray Dodge Charger bearing a Florida tag with the first three digits '709' arrive at 801 West Tiffany Drive, Apartment 2, West Palm Beach, Florida. A white female matching the description of Moore was observed exiting the vehicle and entering Apartment 2. Thereafter, a black male matching Blake's description exited the apartment and helped the female carry an unknown item into the apartment. Agents then knocked on the door of 801 West Tiffany Drive, Apartment 2 and announced their presence and purpose. The black male and white female answered the door and it was determined to be Blake and Moore. Blake and Moore were then ordered out of the apartment and placed under arrest. Blake and Moore advised that two minor children were alone inside the apartment.

Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that evidence, contraband, fruits and instrumentalities of violations of title

18 United States Code § 1591 and . . . § 2422(b) will be found in 801

West Tiffany Drive, Apartment 2, West Palm Beach, Florida.

The probable cause claim "that evidence, contraband, fruits and instrumentalities of violations of title 18 United States Code § 1591 and . . . § 2422(b) will be found in 801 West Tiffany Drive, Apartment 2, West Palm Beach, Florida" on February 20, 2013, boiled down to this: (1) A juvenile who claims to have worked as an under-aged prostitute for Dontavious Blake and Tara Moore in 2011 "believed," for reasons unexplained, that Dontavious Blake lived in a duplex "in the Westgate area" (which 801 West Tiffany Drive, Apartment 2, West Palm Beach, is not) and she "believed," for reasons unexplained, that he had a laptop computer in that home at that time; (2) Dontavious Blake is a licensed Florida driver who drives a gray Dodge Charger, although there is no assertion that his driver's license or automobile registration linked him to 801 West Tiffany Drive, Apartment 2, West Palm Beach, Florida, as his home; and (3) on February 20, 2013, Dontavious Blake and Tara Moore were found together at 801 West Tiffany Drive, Apartment 2, West Palm Beach, Florida, at which time there were two children at that address. Thus, the affidavit, purged of tainted information gained through the initial illegal entry, failed to provide probable cause to search for evidence or instrumentalities of the crimes charged in the complaint would be found at 801 West Tiffany Drive, Apartment 2, West Palm Beach, on February 20, 2013.

### 2. The Government Cannot Establish That It Intended To Seek A Search Warrant For 801 West Tiffany Drive, Apartment 2, West Palm Beach, Prior To The Improper Entry

Richard Armitage, who served as U.S. Deputy Secretary of State, is quoted as saying, "I learned one lesson that never served me wrong: that forgiveness is easier to get than permission." Such an attitude by law enforcement cannot be tolerated, which is a core concern of the exclusionary rule. Even if the search warrant affidavit, purged of tainted information gained through the initial illegal entry, provided probable cause to search for evidence or instrumentalities of crime at 801 West Tiffany Drive, Apartment 2, West Palm Beach, on February 20, 2013, the exclusionary rule prohibits the government from using the evidence in question unless it proves, by a preponderance of the evidence, that the decision to seek the search warrant was not prompted by what the agents saw during their initial illegal entry. *See United States v. Siciliano*, 578 F3d 61 (1st Cir. 2009).

If the agents had already decided to seek a search warrant for 801 West Tiffany Drive, Apartment 2, West Palm Beach, as of February 19, 2013, why did they not do so contemporaneously with the application for an arrest warrant? The Court should compare the affidavit attached to the criminal complaint of February 19, 2013, with the affidavit attached to the search warrant application of February 20, 2013. It will discover that the "Investigative Findings" of the search warrant affidavit are taken *in haec verba* from the complaint affidavit except for the paragraph summarizing the events of February 20, 2013, at 801 West Tiffany Drive, Apartment 2, West Palm Beach. It should be abundantly clear to the Court that what the agents saw when they entered the residence on February 20, 2013, influenced or motivated their

decision to procure a search warrant.

      D.      **The Government Was Not Entitled To An Ex Parte Order Under The All Writs Act Requiring Apple, Inc., To Circumvent The Apple iPad Tablet's Security System And To Provide Law Enforcement With Mr. Blake's Encrypted Data From His Tablet**

Among the items seized from Ms. Moore's home was an Apple iPad password protected computer. In addition to the irregularities regarding the manner in which it was obtained, another irregularity warranting suppression is the manner in which that item was thereafter searched.

A search by a private party implicates the Fourth Amendment when that party acts as "an 'instrument' or agent of the state." *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971); *Lustig v. United States*, 338 U.S. 74 (1949); *United States v. Ford*, 765 F.2d 1088, 1090 (11th Cir. 1985). This case has the unusual feature of the government forcing a private party to assist in a search through a court order obtained under the supposed authority of the All Writs Act, 28 U.S.C. § 1651. That *ex parte* communication with the Court while this case was pending, and while the undersigned counsel was counsel of record, deprived Mr. Blake of the opportunity to challenge that misplaced reliance at the time the Court issued the order. By this motion, he challenges it.

It is instructive to compare the case at bar with *In Re Grand Jury Subpoena Duces Tecum*, 670 F.3d 1335 (11th Cir. 2012). In the latter case, the government sought to compel the defendant himself to enable them to search a computer they had seized from him. The Court of Appeals observed that "[t]he district court . . . could have compelled Doe to turn over the unencrypted contents – and held him in contempt if he refused to do so – had the government offered and the district court granted Doe constitutionally sufficient immunity." *Id*. at 1349-50.

In the case at bar, the government instead sought to compel a third party to provide such assistance in order to avoid Fifth Amendment issues. The issue is whether they were entitled to do so under the auspices of the All Writs Act.

The All Writs Act, 28 U.S.C. § 1651(a), originally enacted as part of the Judiciary Act of 1789, provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The manifest purpose of the act is to aid the Court effectuating *its* duties and *its* jurisdiction, not to aid litigants. *See Sampson v. Murray*, 415 U.S. 61 (1974). In support of its invocation of the All Writs Act, the government relied heavily upon the Supreme Court's ruling in *United States v. New York Telephone Co.*, 434 U.S. 159 (1977). That reliance was misplaced. "*New York Telephone Co.* stands for the proposition that the All Writs Act enables the Court to, in the absence of other enabling authority, issue supplemental orders to effectuate valid orders or warrants issued under existing law, *but only to the extent any supplemental order issued does not constitute an additional invasion of privacy*." *In Re Application of the United States For An Order Authorizing Disclosure Of A Specified Wireless Telephone*, 849 F.Supp.2d 526, 579 (D. Maryland 2011) (emphasis added). Notably, the issue in *United States v. New York Telephone Co.* was whether the court could "properly order a telephone company to provide federal law enforcement officials the facilities and technical assistance necessary for the implementation of its order authorizing the use of pen registers." *Id*. 434 U.S. at 161. Importantly, the government does not need a search warrant in order to install a pen register because a person does not have a legitimate Fourth Amendment expectation of privacy in the phone numbers he has dialed. *Smith*

*v. Maryland*, 442 U.S. 735, 745 (1979) ("We therefore conclude that petitioner . . . entertained no actual expectation of privacy in the phone numbers he dialed, and that, even if he did, his expectation was not 'legitimate.'  The installation and use of a pen register, consequently, was not a 'search,' and no warrant was required.").  Thus, the supplemental order in *United States v. New York Telephone Co.* caused no additional invasion of privacy.  By contrast, Ms. Moore's Apple iPad computer tablet was password protected to safeguard his privacy interest in its contents.

By its very terms, the All Writs Act empowers Courts to "issue all writs necessary or appropriate."  Hence, the Supreme Court found that the act "extends, *under appropriate circumstances*, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." 434 U.S. at 174 (emphasis added).  The application of the Act was inappropriate here because of the additional intrusion into Ms. Moore's expectation of privacy.

### III  Conclusion

The government cannot meet its burden of establishing that the entry into 801 West Tiffany Drive, Apartment 2, West Palm Beach, without a search warrant was proper as a security sweep or to render necessary emergency aid.  The search warrant affidavit, when purged of tainted information obtained during the improper entry, fails to establish probable cause that evidence or instrumentalities of the charged offenses would be found at 801 West Tiffany Drive, Apartment 2, West Palm Beach.  Moreover, the government cannot establish that it intended to seek a search warrant prior to the improper entry.  Therefore, the items of physical evidence seized from the defendants' home should be suppressed.  Regarding one of said items, an Apple iPad computer tablet, its contents should be suppressed for the additional reason that the

government improperly obtained *ex parte* an order compelling a private party to circumvent its security system.

Respectfully submitted,
*s/; Peter T. Patanzo*
Benjamin, Aaronson, Edinger & Patanzo, PA
1 Financial Plaza, suite 1615
Fort Lauderdale, Florida 33394
(954) 779-1700 phone
(954) 779-1771 fax
ppatanzo@bellsouth.net
Counsel for Tara Jo Moore

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on CM / ECF, this 18th day of June, 2014 and served on those associated with the electronic service list.

                                       *s/; Peter T. Patanzo*
                                       Peter T. Patanzo, Esq.