UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 13-80054-CR-MARRA

UNITED STATES OF AMERICA,

vs.

DONTAVIOUS M. BLAKE ,
        a/k/a "D", and
TARA JO MOORE,

        Defendants.
_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION
## TO MOTION TO SUPPRESS EVIDENCE OBTAINED FROM FACEBOOK

**COMES NOW**, The United States of America, by and through the undersigned counsel,

hereby files its Response to Defendant's Motion to Suppress Physical Evidence Obtained from

Facebook (D.E. # 171). In response thereto the government states as follows:

### I. Statement of Facts

In July 2012, the National Center for Missing and Exploited Children (NCMEC)

forwarded a Cyberline Tip Report to agents identifying a Backpage ad depicting an unknown

white female, utilizing telephone number 305-900-9369. The ad was reported to Backpage.com as

depicting a minor or child under the age of eighteen. NCMEC identified an Internet Protocol (I.P.)

address and email address associated with the ad. The email address,

snowbunny561@hotmail.com, was queried against social networking sites such as Facebook and

Myspace by NCMEC. A Facebook account belonging to TARA MOORE, West Palm Beach,

1

Florida was located. Further, a Myspace account was located associated with DONTAVIOUS BLAKE.

In August 2012, agents interviewed juvenile T.H. who revealed that she first engaged in prostitution at the age of 15 during the summer of 2011.    During that time, T.H. worked for a pimp only known to her by the nickname of "D."   "D" was described as a black male, with a muscular build and no facial hair, who drove a gray Dodge Charger. "D's" girlfriend was a white female T.H. knew as TARA LAST NAME UNKNOWN (LNU).   TARA LNU answered phones and calls for "D" relating to prostitution and escort calls. T.H. saw photographs of herself in online escort ads believed to have been posted by "D" at a time when T.H. no longer worked for him. T.H. also reviewed current online escort ads and identified an escort ad with a white female advertising under the name "Jemma" as a girl who worked for "D."   In paragraph 15 of the February 26, 2014 search warrant affidavit, T.H. explained that she sent him pictures of herself when she was a minor and he used the pictures to create online escort ads on Backpage.   T.H. said that Blake would list phone numbers in the ads that belonged to him or were in his control.   T.H. said that Moore would answer the phone calls from the clients and negotiate a price and then contact Blake who would pick T.H. up and transport her to the hotels to engage in commercial sex acts.   T.H. also identified Backpage ads associated with Blake and Moore and identified herself in photographs in the ad.

In September 2012, a cooperating defendant (CD) was interviewed. The CD reported that "DEE" LNU was a pimp operating in the Palm Beach County area. The CD contacted T.H. through an ad that was posted on an online escort service to engage in sexual activity. Thereafter, T.H. revealed that she worked for "DEE" LNU and would split money proceeds from her date with "DEE" LNU.   The CD reported that L.P. was another girl working for "DEE" LNU.   L.P. was approximately one year older than T.H.   L.P. was still believed to be working for "DEE" LNU.

2

The CD identified telephone number (561)727-7483 as belong to "DEE" LNU.   In paragraphs 11, 12 and 13 of the February 26, 2014 search warrant affidavit, the FBI link the telephone number (561)727-7483 to Blake.   He was using the phone number in online escort ads as late as September 25, 2013.    In paragraph 14 of the February 26, 2014 search warrant affidavit, the FBI links further ads to Blake and Moore's phone numbers and email addresses.

A subpoena was issued to Backpage.com for a particular ad that C.F. identified as belonging to BLAKE to include all other ads posted by the same user or users and any ads utilizing the email address associated with TARA MOORE. In response to the subpoena, Backpage provided records showing that the name associated with the ads was DONTAVIOUS BLAKE, West Palm Beach, Florida with an additional phone number and the email address, snowbunny561@Facebook.com, determined to belong to TARA MOORE.

On February 20, 2013, agents arrested Blake and Moore for sex trafficking of minors and enticement of minors to engage in a commercial sex act at 801 West Tiffany Drive, Apartment 2, West Palm Beach, Florida.

An additional subpoena to Backpage.com was served on the company for all records and advertisements relating to the user or users posting under telephone number 561-907-2842, a telephone number identified with MOORE based on records from the Palm Beach County Sheriff's Office. Records were provided in response to the subpoena by Backpage.com identifying BLAKE as the user posting the advertisement utilizing the email address, divinehiring@hotmail.com. A query on Facebook for telephone number 561-907-2842, the telephone number determined to be associated with MOORE, revealed the same Facebook account, "tara.moore.54379" associated with the email address, snowbunny561@hotmail.com. In addition, the profile picture for "tara.moore.54379" displays a picture of MOORE alongside the

3

gray Dodge Charger vehicle belonging to BLAKE.   MOORE listed her employment information as "Boss Lady" at "Tricks R us" on the Facebook account.

A search warrant was served on Facebook for the account of "tara.moore.54379" on June 7, 2013.1   This search warrant included a typo on attachment B containing the name of Hernandez Banks.   The Attachment B, however, did reference the correct user Id number as specified in Attachment A.   Facebook provided data for the account "tara.moore.54379" in response to the search warrant in June 2013. The data provided in response to the search warrant was reviewed by SA Pryor.   Facebook established a date range for the data provided beginning with the day the preservation request was received by Facebook on February 21, 2013 through the date that the search warrant was received on June 7, 2013.   The original search warrant requested data whether deleted or still in the possession of Facebook or data that had been preserved pursuant to a request under 18 U.S.C. § 2703(f), to be disclosed by Facebook including all contact, personal identifying information for the account, photographs and other activity associated with the account. Among the data included in response to the search warrant was a cellular phone number associated with the account, telephone number 561-907-2842.   That cellular telephone number corresponds with a cellular phone seized from subject TARA J. MOORE at the time of her arrest. "Heaven Siegel" was listed under the "Friends" of the Facebook account, "tara.moore.54379." Agents interviewed Heaven Siegel in December 2013 and determined that Siegel previously worked for TARA J. MOORE and DONTAVIOUS BLAKE as a prostitute and had direct knowledge of minors who were victims of sex trafficking by BLAKE and MOORE.

In addition, photographs and identifying information were publicly visible to viewers looking at the Facebook account "tara.moore.54379" on the internet. However, Facebook

---

1 See Attachment 1

4

disclosed no photographs and only partial identifying information on the account in response to the June 7, 2013 search warrant. A subsequent preservation request for the account was submitted to Facebook on December 20, 2013.

On April 4, 2013, a federal search warrant (Case Number 14-8082-DLB) was executed on Facebook account Information associated with Facebook Account tara.moore.54379 stored at the premises controlled by Facebook.2   Facebook provided the government with the content that was requested in the search warrant.   Based on the evidence presented to the Magistrate Court, there was sufficient probable cause to believe that Moore's Facebook user account would contain evidence of violations of 18 U.S.C. §§ 1591(a) and 1594(c).

## II.   Memorandum of Law

Facebook—and social media generally—present novel questions regarding their users' expectations of privacy. Facebook users may decide to keep their profiles completely private, share them only with "friends" or more expansively with "friends of friends," or disseminate them to the public at large. ( See Facebook Help Center, http:// www. facebook. com/ help/ privacy (last visited Aug. 10, 2012).) Whether the Fourth Amendment precludes the Government from viewing a Facebook user's profile absent a showing of probable cause depends, inter alia, on the user's privacy settings.

When a social media user disseminates his postings and information to the public, they are not protected by the Fourth Amendment. *See Katz*, 389 U.S. 347, 351 (1967) (citations omitted). However, postings using more secure privacy settings reflect the user's intent to preserve

---

2 See Attachment 2

5

information as private and may be constitutionally protected. *See Katz*, 389 U.S. at 351–52 (citations omitted).

In determining whether probable cause exists to authorize a search, a magistrate "is simply to make a practical common-sense decision whether, given all the circumstances before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987). "[P]robable cause itself is a doctrine of reasonable probability and not certainty." *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir.), cert. denied, 116 S.Ct. 189 (1995).   "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli v. United States*, 393 U.S. 1, 27 (1968). The existence of probable cause is to be determined under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 233 (1983).

In evaluating the sufficiency of an affidavit for a search warrant, a magistrate need only have had a "substantial basis" for concluding that probable cause existed based upon the totality of the circumstances.   *Massachusetts v. Upton*, 466 U.S. 727 (1984).   The finding of probable cause by the magistrate issuing the warrant is to be given great deference.   *United States v. Day*, 949 F.2d 973, 977 (8th Cir. 1991), cert. denied, 114 S.Ct. 2140 (1994).

Evidence obtained by law enforcement officials acting in objectively reasonable, good faith reliance upon a search warrant issued by a neutral magistrate is admissible, even if the affidavit on which the warrant was based was insufficient to establish probable cause. *United States v. Leon*, 468 U.S. 897 (1984), *United States v. Peden*, 891 F.2d 514, 519 (5th Cir. 1989); *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988).   Suppression is appropriate only in the absence of good faith on the part of the affiant, which is demonstrated by any one of four rare situations:

6

> [(1)] the magistrate judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; . . . [(2)] the issuing magistrate wholly abandoned his judicial role; . . . [(3)] [the] warrant [is] based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" . . . [or (4)] [the] warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

*United States v. Leon*, 468 U.S. 897, 923 (1984)(citations omitted).   Moore offers no legal or factual basis to support the suppression of the evidence under any of the *Leon* good faith exceptions.

In the instant motion, Moore, through counsel, attacks the searches of one user account, "tara.moore.54379".   The search warrant affidavits established that the user account, "tara.moore.54379", or someone using the user account was linked to the posting of ads on Backpage.com of minors to engage in sexual activity. The affidavit conclusively established probable cause to believe that evidence related to the crime of sex trafficking of minors would be found in the Facebook user account.   Moreover, the affidavit provides abundant reason to conclude that Moore or at least someone using Moore's user account was engaged in sex trafficking of minors as early as the summer of 2011and continuing until approximately September 2012.   The question before this court is whether there was probable cause to search and seize the contents of Moore's user account, "tara.moore.54379".   *United States v. Craig*, 861 F.2d 818, 823 FN 6 (5th Cir. 1988).

In this case Moore's email address snowbunny561@hotmail.com was link both to child sex trafficking and to her Facebook user address.   A phone number (561-907-2842) identified with Moore based on records from the Palm Beach County Sheriff's Office was used to post ads on Backpage.   A query on Facebook for that same number (561-907-2842) revealed the Facebook user account "tara.moore.54379".   Moore's Facebook user account listed her employment as

"Boss Lady" at "Tricks R us".   Thus, the affidavit is supported with probable cause to believe that evidence of violations of 18 U.S.C. §§ 1591(a) and 1594(c) would be found in her Facebook account.

### A.    The Search and Seizure Of Moore's Facebook User Account Was Made Pursuant To Valid Search Warrants

Moore claims that the evidence obtained from her Facebook user account, "tara.moore.54379" should be suppressed because the June 7, 2013 and the February 26, 2014 search warrants were invalid.

Case law on the issue of searching computer equipment is instructive. In *United States v. Simpson*, 152 F.3d 1241 (10th Cir. 1998), investigators obtained a warrant to seize a defendant's "computer diskettes . . . and the defendant's computer" based on probable cause to believe it contained child pornography. The investigators seized the computer and then searched it in police custody, finding child pornography images. On appeal following conviction, the defendant claimed that the investigators lacked the authority to search the computer because the warrant merely authorized the seizure of equipment. The Tenth Circuit rejected the argument, concluding that a warrant to seize computer equipment permitted agents to search the equipment. *See id. at* 1248. *See also United States v. Gray*, 78 F. Supp. 2d 524, 530-31 (E.D. Va. 1999) (holding that initial warrant authorizing search for evidence of computer hacking justified a subsequent search for such evidence, even though agents uncovered incriminating evidence beyond the scope of the warrant in the course of executing the search).

### B.    The Search Warrant Properly Authorized The Search and Seizure Of All Evidence Relating To Crimes Involving §§ 1591(a) and 1594(c) In Moore's Facebook User Account

8

The Fourth Amendment requires that every warrant must "particularly describe[e] . . . the . . . things to be seized." U.S. Const. Amend. IV. The particularity requirement prevents law enforcement from executing "general warrants" that permit "exploratory rummaging" through a person's belongings in search of evidence of a crime. *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The particularity requirement has two distinct elements. *See United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999). First, the warrant must describe the things to be seized with sufficiently precise language so that it tells the officers how to separate the items properly subject to seizure from irrelevant items. *See Marron v. United States*, 275 U.S. 192, 296 (1925) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."); *Davis v. Gracey*, 111 F.3d 1472, 1478 (10th Cir. 1997). Second, the warrant must not be so broad that it encompasses items that should not be seized. *See Upham*, 168 F.3d at 535. Accordingly, the description in the warrant of the items to be seized should be limited in scope by the probable cause established in the warrant. *See In re Grand Jury Investigation Concerning Solid State Devices*, 130 F.3d 853, 857 (9th Cir. 1997).

In the warrant, Attachment B Section II entitled "**Information to be seized by the government**" was limited as follows: All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1591(a), and 1594(c) involving TARA J. MOORE and DONTAVIOUS M. BLAKE from June 2011 until February 21, 2013.

In the Warrant, Section I listed the items that were requested to be searched as follows:

(a)     All contact and personal identifying information for Facebook account tara.moore.54379, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical

address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)    All "check ins" and other location information;

(g)    All IP logs, including all records of the IP addresses that logged into the account;

(h)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)    All information about the Facebook pages that the account is or was a "fan" of;

(j)    All past and present lists of friends created by the account;

(k)    All records of Facebook searches performed by the account;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)     The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(n)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(o)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## C.     The Search Warrant Sufficiently Described The Items To Be Seized

In testing whether a search warrant meets the particularity requirement, the court should determine whether the warrant enables the law enforcement officer who is reading the description in the warrant to reasonably ascertain and identify the items to be seized.   *United States v. Bentancourt*, 734 F.2d 750, 754-55 (11th Cir.), cert. denied 105 S.Ct. 440 (1984); *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982), cert. denied, 464 U.S. 814 (1983).   In this case the warrant clearly describes to the officer the items to be seized.   The Eleventh Circuit has observed that there are circumstances when a law enforcement officer applying for a warrant cannot give an exact description of the materials to be seized even though there is probable cause to believe that such materials exist and that they are being used in the commission of a crime.   In those circumstances, this Court has upheld warrants where the description was as specific as the circumstances allowed.   *United States v. Santarelli*, 778 F.2d 609. 614 (11th Cir. 1985); *Wuagneux*, 683 F.2d at 1349.

## D.     The Search Warrants Was Not Overbroad

11

Moore alleges the search warrant was overbroad with respect to the items the search warrant authorized the agents to seize.   The list of items and categories of items authorized to be seized in the search warrant in this case were sufficiently particularized in their description and were properly limited to items that constituted evidence of violations of 18 U.S.C. 1591(a) and 1594(c). *See,   United States v. Wuagneux*, 683 F.2d 1343, 1350 (11th Cir.1982), (finding that warrant authorizing the seizure of "property that constitutes evidence of the above enumerated offenses, fruits of the crimes named above and property which is or has been used to commit such crimes enumerated herein" sufficiently particular), cert. denied, 464 U.S. 814 (1983).

In attachment B to the first and second affidavit, the term "records" is broadly defined to include all items of evidence in whatever form and by whatever means they may have been created or stored.   This language describes the general class of information to be seized ("all records"). The search warrant narrows the definition to the extent possible (only those records involving violations of 18 U.S.C. §§ 1591(a), and 1594(c) involving TARA J. MOORE and DONTAVIOUS M. BLAKE from June 2011 until February 21, 2013).

The courts have generally permitted agents to seize computer equipment (which is similar to digital information stored by internet service providers) when agents reasonably believe that the content described in the warrant may be stored there, regardless of whether the warrant states expressly that the information may be stored in electronic form. *See, e.g., United States v. Musson*, 650 F. Supp. 525, 532 (D. Colo. 1986). As the Tenth Circuit explained in *United States v. Reyes*, 798 F.2d 380, 383 (10th Cir. 1986), "in the age of modern technology and commercial availability of various forms of items, the warrant c[an] not be expected to describe with exactitude the precise form the records would take."

12

Accordingly, what matters is the substance of the evidence, not its form, and the courts will defer to an executing agent's reasonable construction of what property must be seized to obtain the evidence described in the warrant. *See United States v. Hill*, 19 F.3d 984, 987-89 (5th Cir. 1994); *Hessel v. O'Hearn*, 977 F.2d 299 (7th Cir. 1992); *United States v. Word*, 806 F.2d 658, 661 (6th Cir. 1986); *United States v. Gomez-Soto*, 723 F.2d 649, 655 (9th Cir. 1984) ("The failure of the warrant to anticipate the precise container in which the material sought might be found is not fatal."). *See also United States v. Abbell*, 963 F. Supp. 1178, 1997 (S.D. Fla. 1997) (noting that agents may legitimately seize "[a] document which is implicitly within the scope of the warrant -- even if it is not specifically identified").

Therefore, Moore's use of the e-mail accounts and telephone numbers which are linked to her Facebook user account to engage the advertisement of minors for prostitution is probative evidence in establishing that she was involved in the sex trafficking of minors.   As a result, SA Pryor reasonably believed that evidence of these crimes will be found in the Facebook user account which is essentially a social network site that derives its income from advertising. Accordingly, Moore's complaints regarding the breadth and scope of the search warrant are without merit.

### E.    Agent Pryor Had A Good Faith Basis To Search and Seize the information in the Facebook User Accounts

Agent Pryor and others who executed the searches had an objectively reasonable good faith belief that the warrants were sufficiently particular. *See generally United States v. Leon*, 468 U.S. 897, 922 (1984); *Massachusetts v. Shepard*, 468 U.S. 981, 990-91 (1984). This Court should not order suppression of evidence relating to Moore's involvement in the advertisement and sex trafficking of minors where the agents had a good faith basis to believe her Facebook user account

13

contained evidence of crimes involving child exploitation. *See, e.g., United States v. Hunter*, 13 F. Supp. 2d 574, 584-85 (D. Vt. 1998) (holding that good faith exception applied even though computer search warrant was insufficiently particular). Even if the Court finds that the description of the items listed to be seized in Section 1 of Attachment B to the search warrant was too broad, the warrants should be read in conjunction with the more particular description contained in Section II of Attachment B.   *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* ' 4.6(a) (1994).   While the universe of things to be searched is large, the particular things to be seized is small and confided to only those records involving violations of 18 U.S.C. §§ 1591(a), and 1594(c) involving TARA J. MOORE and DONTAVIOUS M. BLAKE from June 2011 until February 21, 2013

**F.      The Government Followed Department of Justice Protocol**

Courts have long recognized that law enforcement must have some flexibility in the execution of a search warrant.   This is especially true in the context of internet service providers. In a situation like this where the items subject to seizure cannot be readily separated from those not subject to seizure, it is proper for the government to take both until a thorough analysis can be conducted.   *See, United States v. Schandl*, 947 F.2d 462, 465-66 (11th Cir. 1991), cert. denied, 112 S.Ct. 2946 (1992); and *United States v. Shilling*, 826 F.2d 1365 (4th Cir. 1987), cert. denied, 484 U.S. 1043 (1988).

**G.      Exclusionary Rule Does Not Apply In This Case**

In *United States v. Sypher*, 296 F.Supp.2d 50 (D.N.H. 2003), the court stated that "because the purpose of the exclusionary rule is to deter police officers from violating the Fourth Amendment, evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional

under the Fourth Amendment.' " *Illinois v. Krull*, 480 U.S. 340, 348-49, 107 S.Ct. 1160, 94

L.Ed.2d 364 (1987) (*quoting United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 45

L.Ed.2d 374 (1975));   *see also United States v. Curzi*, 867 F.2d 36, 44-45 (1st Cir.1989) (noting

that good faith exception to exclusionary rule applies when officers act in good faith in relying on

warrant later declared unconstitutional).


## Conclusion

Wherefore, the government respectfully requests that Moore's Motion to Suppress Items

Obtained From Moore's Facebook user account tara.moore.54379 should be denied.


Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

  s/   LOTHROP MORRIS
By: LOTHROP MORRIS
    ASSISTANT U.S. ATTORNEY
    Florida Bar # 0095044
    500 Australian Avenue, Suite 400
    West Palm Beach, FL 33401
    (561) 820-8711
    (561) 820-8777 (FAX)
    LOTHROP.MORRIS@USDOJ.GOV

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on June 27, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

<u>S/ LOTHROP MORRIS</u>
LOTHROP MORRIS
ASSISTANT UNITED STATES ATTORNEY

16