AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

*Certified to be a true and correct copy of the document on file Steven M. Larimore, Clerk, U.S. District Court Southern District of Florida*

By _____ Deputy Clerk

Date __2-26-14__

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No.    14-8082-DLB |
| Information associated with Facebook Account tara.moore.54379 that is stored at the premises controlled by Facebook | ) |
| | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

### See Attachment A (incorporated by reference)

        The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### See Attachment B (incorporated by reference)

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

        **YOU ARE COMMANDED** to execute this warrant on or before ____3-12-14____
                                                                                    *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.        ☐ at any time in the day or night as I find reasonable cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge

_____  .
              *(name)*

        ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*
                        ☐ until, the facts justifying, the later specific date of _____  .

Date and time issued:   02/26/2014 ~~0:00 am~~ 12:01 p.m.        _____
                                                                                    *Judge's signature*

City and state:   West Palm Beach, Florida        U.S. Magistrate Judge Dave Lee Brannon
                                                                            *Printed name and title*

AO 93 *(Rev. 12/09) Search and Seizure Warrant (Page 2)*

| | Return | |
|---|---|---|
| Case No.:<br>14-8082-DLB | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the Facebook account,

**tara.moore.54379** that is stored at premises owned, maintained, controlled, or operated by

Facebook, a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.   **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A, from the period of the creation of the account until February 21, 2013:

   (a)   All contact and personal identifying information for Facebook account **tara.moore.54379**, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

   (b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

   (c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

   (d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)    All "check ins" and other location information;

(g)    All IP logs, including all records of the IP addresses that logged into the account;

(h)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)    All information about the Facebook pages that the account is or was a "fan" of;

(j)    All past and present lists of friends created by the account;

(k)    All records of Facebook searches performed by the account;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)    The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(n)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(o)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II.   Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1591(a), and 1594(c) involving TARA J. MOORE and DONTAVIOUS M. BLAKE from June 2011 until February 21, 2013, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Use of the Facebook account as it was used to publicize, advertise, communicate and/or facilitate the prostitution activities of BLAKE and MOORE including sex trafficking of minors.

(b) Records relating to who created, used, or communicated with the Facebook account, **"tara.moore.54379"** including records about their identities and whereabouts.

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk
U.S. District Court
Southern District of Florida
By _Sandra Angelo_
            Deputy Clerk
Date _2-26-14_

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
Information associated with Facebook Account tara.moore.54379
that is stored at the premises controlled by Facebook

)
)
)
)
)
)

Case No.  14-8082-DLB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1591, 1594 | Child Sex Trafficking and Conspiracy to Commit Same |

The application is based on these facts:
See Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Applicant's signature_

F.B.I. Special Agent Christina J. Pryor
*Printed name and title*

Sworn to before me and signed in my presence.

Date:      02/26/2014

_Judge's signature_

City and state:   West Palm Beach, Florida

U.S. Magistrate Dave Lee Brannon
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Christina J. Pryor, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.     I am a Special Agent with the Federal Bureau of Investigation and have been since August 2009. I am currently assigned to PB-2, the Violent Crimes and Major Offender Squad of the Palm Beach County Resident Agency, Miami Division. I have received training in federal criminal laws and investigation techniques. Among my responsibilities as a Special Agent are investigating crimes against children, particularly offenses involving child pornography and the exploitation of children to include child prostitution.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.     I am investigating the activities of DONTAVIOUS MINGEL BLAKE, date of birth XX-XX- 1981 and TARA JO MOORE, date of birth XX-XX- 1987. (For purposes of this

1

affidavit, the month and day of dates of birth have been redacted.) This affidavit is made in support of an application for a search warrant for the Facebook Account, **"tara.moore.54379"** which is more particularly described in Attachment A of this affidavit for items specified in Attachment B, which constitute instrumentalities, fruits, and evidence of the below violations. BLAKE and MOORE conspired to and knowingly persuaded, induced, enticed, or coerced an individual who has not yet attained the age of 18 years to engage in prostitution or any sexual activity for which a person can be charged with a criminal offense, all in violation of 18 U.S.C. §§ 371, 1591(a) and 2422(b).

4.      The statements in this Affidavit are based in part on information provided to me by other law enforcement officers and on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

## STATUTORY AUTHORITY

5.    This investigation concerns alleged violations of Title 18, United States Code, §§ 1591(a)(1) and 1594(c).  Section 1591(a) provides, "Whoever knowingly  in or affecting interstate or foreign commerce…recruits, entices,  harbors, transports, provides,  obtains, or maintains,  by any means a person or benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in paragraph (1)… knowing or in reckless disregard of the fact…that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)." 1591(b) states, "the punishment for an offense under subsection (a)… [is] a fine under this title and imprisonment for not less than 10 years or for life."

## BASIS FOR FACTS
## CONTAINED IN THIS AFFIDAVIT

6. I have learned through my training, experience, and contact with other trained law enforcement officers that prostitution has generally moved to escort based services, because of law enforcement pressure being placed on prostitutes who work on the streets in view of the public. This escort based service primarily works by way of telephone or the use of the internet. This underground movement, along with the use of the internet, including e-mail services and online classified services, enables those individuals, commonly referred to as "pimps" (for whom prostitutes work), to keep prostitutes off the streets, giving the appearance that there is less prostitution, in an attempt to avoid law enforcement detection.

7. Often, pimps set a monetary quota for prostitutes to meet per day. Based on source information and information provided to me by other trained law enforcement officers, a pimp can easily generate up to $1,000.00 a day with one prostitute. Therefore, to continue to make money and avoid law enforcement detection, the majority of pimps transport their prostitutes from one location to another. Further, when any given location becomes too visible to law enforcement (i.e. "hot"), or fails to generate enough money, or a large public gathering is to take place in a certain city, such as major sporting events, pimps transport their prostitutes from one state to another to make their money. Prostitutes frequently work defined areas on the street known as "tracks," and/or serve as escorts through escort services. The escort services frequently advertise on web pages and in the print media. Escort services frequently are fronts for prostitution. Pimps and prostitutes frequently use the internet, in addition to cellular phones, to communicate, coordinate dates and keep the pimps informed regarding the prostitutes availability. It is my experience that pimps and prostitutes frequently change e-mail accounts or use fictitious names to avoid detection.

## INVESTIGATIVE FINDINGS

8. In July 2012, the National Center for Missing and Exploited Children (NCMEC) forwarded a Cyberline Tip Report to agents identifying a Backpage ad depicting an unknown white female, utilizing telephone number 305-900-9369. The ad was reported to Backpage.com as depicting a minor or child under the age of eighteen. NCMEC identified an Internet Protocol (I.P.) address and email address associated with the ad. The email address, snowbunny561@hotmail.com, was queried against social networking sites such as Facebook and Myspace by NCMEC. A Facebook account belonging to TARA MOORE, West Palm Beach, Florida was located. Further, a Myspace account was located associated with DONTAVIOUS BLAKE.

9. In August 2012, agents interviewed juvenile T.H., date of birth, XX-XX-1995, in a separate investigation relating to the production of child pornography. During the course of the interview, T.H. revealed that she first engaged in prostitution at the age of 15 during the summer of 2011. T.H. had approximately 10-15 regular clients or "johns" and worked in hotels in the Palm Beach County area. During that time, T.H. worked for a pimp only known to her by the nickname of "D." "D" was described as a black male, with a muscular build and no facial hair, who drove a gray Dodge Charger. "D's" girlfriend was a white female T.H. knew as TARA LAST NAME UNKNOWN (LNU). TARA LNU answered phones and calls for "D" relating to prostitution and escort calls. "D" worked approximately 4-5 girls out of hotels in the Palm Beach County area. T.H. and a friend, not further identified, also a juvenile, worked for "D" during the same time period. T.H. would keep a portion of the proceeds from the calls or "dates" and a portion of the proceeds were paid to "D." T.H. last saw "D" in the winter of 2012 in the Westgate area driving the gray Dodge Charger. "D" was believed to live in the Westgate area in

4

a duplex and had a laptop computer in the home. T.H. saw photographs of herself in online escort ads believed to have been posted by "D" at a time when T.H. no longer worked for him. T.H. also reviewed current online escort ads and identified an escort ad with a white female advertising under the name "Jemma" as a girl who worked for "D."

10. In September 2012, a cooperating defendant (CD) was interviewed. The CD reported that "DEE" LNU was a pimp operating in the Palm Beach County area. "DEE" LNU was described as a black male who drives a gray Dodge Charger. The CD contacted T.H. through an ad that was posted on an online escort service to engage in sexual activity. Thereafter, T.H. revealed that she worked for "DEE" LNU and would split money proceeds from her date with "DEE" LNU. The CD advised that "DEE LNU's" cellular telephone number could be found in the CD's cellular phone contacts list. BRITTNEY LNU, approximately twenty years old, also worked for "DEE" LNU and went on calls with T.H.  At a point in time when T.H. was no longer working for "DEE" LNU, the CD discovered online ads using T.H.'s photographs.  The CD contacted "DEE" LNU telling him to stop using T.H.'s photos. The CD reported that L.P. was another girl working for "DEE" LNU who was approximately one year older than T.H. L.P.'s telephone number was believed to be in the CD's cellular phone contact list, and L.P. was still believed to be working for "DEE" LNU. In a later interview in October 2012, the CD identified telephone number (561)727-7483 as belong to "DEE" LNU.

11. On September 25, 2012, agents and law enforcement conducted an undercover operation at a hotel in West Palm Beach. During the course of the investigation, an undercover employee (UCE) contacted an online escort ad and had phone conversations with a female and male to negotiate the price for an "outcall" at the hotel.  Thereafter, a white female posting under the name "JEMMA" arrived at the hotel and engaged in conversation and negotiated the price for

5

sex acts with the UCE. Thereafter, the female, an adult, C.F., was interviewed by agents. C.F. reported that she had ads posted online for escort services under the name "JEMMA." C.F. reported that "DANTE" LNU was her driver to and from the call. "DANTE" LNU was described as a black male, approximately 29-30 years old. C.F. was introduced to "DANTE" LNU by a friend of hers, RACHEL LNU. C.F. paid a portion of the proceeds from her escorting to "DANTE" LNU. "DANTE" LNU was married to a white female, TARA LNU and drove a dark gray vehicle. "DANTE" LNU's phone number was 561-727-7483 and "DANTE" LNU was to return to the hotel to pick up C.F. at the conclusion of the "date."

12.   During the evening of September 25, 2012 and the early morning of September 26, 2012, a dark gray Dodge Charger was seen arriving at the gas station directly adjacent to the hotel where the undercover operation was occurring. Agents and law enforcement stopped the vehicle and subsequently identified the driver as DONTAVIOUS MINGEL BLAKE, date of birth XX-XX-1981. BLAKE was then interviewed by agents. BLAKE reported that his wife or girlfriend TARA MOORE received a call from C.F. stating that she (C.F.) needed a ride to the hotel. A business card for "Divine Escorts" was located in BLAKE's wallet and contained BLAKE's cellular telephone number and the email associated with TARA MOORE. BLAKE advised he had no girls working for him and no girls posting on online escort pages.

13. C.F. gave written consent for agents to search her cellular telephones to include a Metro PCS Huawei and a Metro PCS Kyocera. A search of the Metro PCS Huawei telephone revealed a contact for "DEE" listing telephone number 561-727-7483. On September 25, 2012 at 3:12 P.M., C.F. received an incoming text from "DEE" saying, "No calls yet." C.F. replied, "People calling but Bullshit." "DEE" responded saying, "K I going to get u sum calls." At 7:22 P.M. C.F. received an incoming text from "DEE" saying, "U gotta outcall be ready by 900 k."

14. A subpoena was issued to Backpage.com for a particular ad that C.F. identified as belonging to BLAKE to include all other ads posted by the same user or users and any ads utilizing the email address associated with TARA MOORE. In response to the subpoena, Backpage provided records showing that the name associated with the ads was DONTAVIOUS BLAKE, West Palm Beach, Florida with an additional phone number and the email address, snowbunny561@hotmail.com, determined to belong to TARA MOORE.

15. Juvenile T.H. was interviewed again and was shown a Florida Driver and Vehicle Identification Database (D.A.V.I.D.) photograph of DONTAVIOUS MINGEL BLAKE, date of birth XX-XX-1981. T.H. identified BLAKE as the pimp she knew as "D" for whom she worked in 2011 while she was fifteen-sixteen years old.  T.H. reported that she met BLAKE after finding a business card belonging to him advertising escort services. T.H. contacted BLAKE and met him at the Holiday Inn located off I-95 and Belvedere Road.  BLAKE explained his business to T.H. T.H. then sent pictures of herself to BLAKE, and BLAKE used the photographs to create online escort ads using Backpage.com.  BLAKE would list a phone number in the ad that belonged to or was in his control. MOORE would then answer the calls from the clients or "johns." Once a negotiated price had been agreed upon, BLAKE would contact T.H. and arrange to pick her up and drive her to the hotel or location of the date in his vehicle, the gray Dodge Charger or a green Cadillac.  BLAKE would reserve the hotel rooms for the dates and used hotels to include the Best Western on Palm Beach Lakes, the La Quinta Inn, the Holiday Inn, and the Red Roof Inn on 45th Street. At the conclusion of the date, T.H. paid a portion of the proceeds to BLAKE including payment for a portion of the hotel room. T.H. was shown ads from Backpage.com associated with BLAKE and MOORE and identified herself in a photograph. T.H. was also shown a D.A.V.I.D. photograph of TARA JO MOORE, date of birth

XX-XX-1987. T.H. identified MOORE as the girlfriend or wife of BLAKE, known to her as "TARA."

16. On February 20, 2013, agents observed a gray Dodge Charger bearing Florida tag with the first three digits, "709" arrive at 801 West Tiffany Drive, Apartment 2, West Palm Beach, Florida. A white female matching the description of MOORE was observed exiting the vehicle and entering Apartment 2. Thereafter, a black male matching BLAKE's description exited the apartment and helped the female carry an unknown item into the apartment. Agents knocked on the door of 801 West Tiffany Drive, Apartment 2, and announced their presence and purpose. The black male and white female answered the door, and it was determined to be BLAKE and MOORE. BLAKE and MOORE were then ordered out of the apartment and placed under arrest. BLAKE and MOORE advised that two minor children were alone inside the apartment. Agents then entered the apartment to conduct a safety sweep of the residence and to check on the welfare of the two minor children. Once inside the apartment, an Apple iPad tablet and multiple smart phones were observed lying on the bar/kitchen counter area of the apartment. In addition, a wireless internet router and devices were observed in the same area. The presence of the smart phones and similar internet capable devices were consistent with T.H.'s description of BLAKE using a telephone to post ads for escorting and prostitution on websites such as Backpage.com

17. Also on February 20, 2013, a search warrant was issued by Magistrate Judge Dave Lee Brannon, U.S. District Court, Southern District of Florida, for the residence at 801 West Tiffany Drive, Apartment 2, West Palm Beach, Florida for computers, cellular phones, tablets, other electronic devices and related media. The search warrant was executed by agents on February 20, 2013. Among the items seized from the residence were multiple cellular phones and

an Apple iPad, another tablet computer, a Dell desktop computer tower, digital cameras, an MP3 player, Sony Playstations, and miscellaneous DVDs.

18.  An additional subpoena to Backpage.com was served on the company for all records and advertisements relating to the user or users posting under telephone number 561-907-2842, a telephone number identified with MOORE based on records from the Palm Beach County Sheriff's Office. Records were provided in response to the subpoena by Backpage.com identifying BLAKE as the user posting the advertisement utilizing the email address, divinehiring@hotmail.com. A query on Facebook for telephone number 561-907-2842, the telephone number determined to be associated with MOORE, revealed the same Facebook account, "tara.moore.54379" associated with the email address, snowbunny561@hotmail.com. In addition, the profile picture for "tara.moore.54379" displays a picture of MOORE alongside the gray Dodge Charger vehicle belonging to BLAKE.  MOORE listed her employment information as "Boss Lady" at "Tricks R us" on the Facebook account.

19. A preservation request was submitted to Facebook on February 21, 2013 for the user account, "tara.moore.54379" Facebook case number, 200835.

20.     A search warrant was served on Facebook for the account of "tara.moore.54379" on June 7, 2013.  Facebook provided data for the account "tara.moore.54379" in response to the search warrant in June 2013. The data provided in response to the search warrant was reviewed by Affiant. Facebook established a date range for the data provided beginning with the day the preservation request was received by Facebook on February 21, 2013 through the date that the search warrant was received on June 7, 2013.  The original search warrant requested data whether deleted or still in the possession of Facebook or data that had been preserved pursuant to a request under 18 U.S.C. § 2703(f), to be disclosed by Facebook including all contact, personal

identifying information for the account, photographs and other activity associated with the account. Among the data included in response to the search warrant was a cellular phone number associated with the account, telephone number 561-907-2842.  That cellular telephone number corresponds with a cellular phone seized from subject TARA J. MOORE at the time of her arrest. "Heaven Siegel" was listed under the "Friends" of the Facebook account, "tara.moore.54379." Agents interviewed Heaven Siegel in December 2013 and determined that Siegel previously worked for TARA J. MOORE and DONTAVIOUS BLAKE as a prostitute and had direct knowledge of minors who were victims of sex trafficking by BLAKE and MOORE. In addition, photographs and identifying information were publicly visible to viewers looking at the Facebook account "tara.moore.54379" on the internet. However, Facebook disclosed no photographs and only partial identifying information on the account in response to the previous search warrant. A subsequent preservation request for the account was submitted to Facebook on December 20, 2013.  Affiant believes additional relevant, material information regarding BLAKE and MOORE can be found in the account "tara.moore.54379" and is in the possession of Facebook.

## CONCLUSION

21.    Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that the Facebook account, "tara.moore.54379"are instrumentalities of a crime, specifically, 18 U.S.C. §§ 1591(a) and

1594(c).   Your Affiant, therefore, respectfully requests that a search warrant be issued for the

account.

Christina J. Pryor
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this 26ᵗʰ day of February 2014.

DAVE LEE BRANNON
United States Magistrate Judge

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida

By _____ Deputy Clerk
Date 2-26-14

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook account, **tara.moore.54379** that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A, from the period of the creation of the account until February 21, 2013:

(a)   All contact and personal identifying information for Facebook account **tara.moore.54379**, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)    The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(n)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(o)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1591(a), and 1594(c) involving TARA J. MOORE and DONTAVIOUS M. BLAKE from June 2011 until February 21, 2013, including, for each user ID identified on Attachment A, information pertaining to the following matters:

   (a) Use of the Facebook account as it was used to publicize, advertise, communicate and/or facilitate the prostitution activities of BLAKE and MOORE including sex trafficking of minors.

   (b) Records relating to who created, used, or communicated with the Facebook account, "**tara.moore.54379**" including records about their identities and whereabouts.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____      _____

Date                        Signature

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 14-8082-DLB

IN RE: SEARCH WARRANT,

      Defendant.

_____/

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes ____X____ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes ____x____ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY:    LOTHROP MORRIS_____
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 095044
500 Australian Avenue, Suite 400
West Palm Beach, FL 33401
(561) 820-8711
(561) 820-8777 (FAX)
LOTHROP.MORRIS@USDOJ.GOV