UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO; 13-80054-CR-MARRA / MATTHEWMAN

**UNITED STATES of AMERICA,**
        **Plaintiff,**

  v.

**TARA JO MOORE,**
        **Defendant.**
_____ /

## OBJECTIONS TO THE PRE-SENTENCE REPORT

The Defendant, Tara Jo Moore, by and through undersigned counsel, pursuant to 18 USC § 3553(a); Rule 32(I) of the Federal Rules of Criminal Procedure, Administrative Orders 95-02; 90-26 and U.S.S.G §6A1.3, respectfully files the following objections, additions and clarifications to the Pre-Sentence Report (PSR), in support of a reasonable sentence and one that is sufficient and not greater than necessary.

**I.**    **Offense Conduct:**

**1.**  **Page 4, ¶3:**
**[Related Case:** *USA v. Frank Joseph Smith***].**

Although Mr. Smith was charged and pled guilty to a one count Indictment charging production of child pornography, in violation of 18 USC § 2251(a), his conduct included a pattern of enticing behavior, unlawful sexual activity (including intercourse) with multiple minors and an ongoing sexual relationship with TH. The trial testimony and Mr. Smith's phone records proved that Mr. Smith also operated an escort business (similar to the crimes the

1

defendants have been convicted of) wherein, TH answered phone calls and Mr. Smith provided escorts to engage in commercial sex acts. Mr. Smith was sentenced to 240 months.[1]

    2. **Page 4-5, ¶5**: Moore objects to Probation's conclusion that EP worked for Moore. EP's trial testimony was that she did not have much contact at all with Moore. EP testified that at she spent approximately 20 minutes total with Moore over a years period. EP also testified that she did not work for Mr. Blake. EP considered her involvement with Mr. Blake as a mutual business relationship where Blake provided a place for EP to engage in her own prostitution activities which Blake received partial payment. EP also testified that she and other girls, including TH, engaged in similar conduct that Moore was Indicted for. EP testified that she and TH also took pictures of themselves and each other and posted those pictures in escorts ads on the internet. EP also testified that other girls at the townhouse such as Cassandra Fisher and others took photos of prostitutes, assisted in posting photos on the internet, collected money for Blake and also answered client calls for escorts. Despite engaging in similar conduct as Moore, no other person has been treated similarly or indicted for engaging in similar conduct.

    3. **Page 5,¶6**: EP's trial testimony was that she gave money to Mr. Blake. EP testified

---

[1] At Smith's sentencing, Judge Middlebrooks varied from a guideline range of 292-360 months, concluding that in light of the defendant's age (59) and other circumstances, a life sentence was not necessary to meet the goals of sentencing. (See Sentencing Transcript in *USA v. Smith*, case no. 12-80151-CR (DE:37,p.15)). The Court also recognized a concern for sentencing disparities with a pending Sex Trafficking case before Judge Ryskamp where a pimps guideline range was 121-151 months. (See Smith Sentencing Transcript DE:37,p.3-5,&15). The representations of the parties (at Smith's sentencing) about this comparative Sex Trafficking case was that the pimp had sex with the minor prostitutes and also enticed and coerced a 14 year old prostitute to engage in unlawful sexual activity. (See Smith Sentencing Transcript DE:37,p.2-4). The transcript nor Moore's presentence report names or discusses the sentencing specifics of that comparative Sex Trafficking case or details the reason for the guideline disparity in a similar Sex Trafficking case of 121-151 months and life for Ms. Moore. It would be unreasonable to view Moore's conduct as more harmful or worthy of a sentence in excess of Mr. Smith's.

that she had very little contact with Moore. EP never testified that she gave money earned from a prostitution call to Moore, her dealings in this case were with Mr. Blake. The defendant believes that EP did not testify that approximately 8 girls worked for Blake and Moore at most times. This was not a fact established by evidence at trial.

    4. **Page 5, ¶8**: Ms. Moore objects to the inclusions of the facts contained within paragraph 8. The recitation of facts concerning "Steph" or Stephanie's substance abuse problem and finances are irrelevant to the counts of conviction and not proven at trial. The defendant also objects to the general statement that girls at the townhouse were addicted to drugs and had no money after paying money to Blake, paying to stay at the townhouse and paying for drugs.

    5. **Page 6, ¶9**: Cassandra Fisher never testified at trial. Moore agrees that Fisher periodically lived at the townhouse and engaged in voluntary prostitution activity. The trial testimony established that Fisher primarily dealt with Mr. Blake. Text message communication between Fisher and Blake proved that they engaged in an on-going intimate sexual relationship during the course of the conspiracy. Text message communication also revealed that Fisher answered phones for the escort business, took photographs of herself and others for internet advertisements and collected fees which were eventually turned over to Blake, conduct which Ms. Fisher has never been charged with. There was no evidence presented at trial to suggest that Moore supervised, directed or otherwise managed the activities of Fisher. Moore objects to probations characterization that Fisher worked for Moore and believes the evidence suggests at best a mutual business relationship with Mr. Blake but certainly not someone who was supervised or directed by Ms. Moore.

6. **Page 6, ¶12**:  Moore objects to the inclusion of BH within the PSR.  BH did not testify at trial and was not a charged victim in any of the five Indictments.  Moore believes there was no evidence presented at trial regarding any activity or conduct involving BH.

7. **Page 7, ¶18**:  The defendant objects to Probation's statement that "Moore told TH that if she was nice to clients or johns, the clients would buy things for her and take her places".  This was not presented as evidence at the trial.  The defendant does not believe TH testified that Moore rented hotel rooms or specifically at La Quinta Inn.

8. **Page 7, ¶19**:  The defendant objects to Probation's conclusion that Moore was aware of TH's age at the time TH was engaging in prostitution activity.  Moore does not believe TH ever testified to telling Moore her true age.  Khrystina Trejo was the only witness to testify that she had a conversation with Moore about the age of TH.  Ms. Trejo testified that Moore told her she (Moore) thought she was 18.  The defendant also objects to Probation's conclusion that Moore told TH to tell other girls and johns that she was over 18.

9. **Page 8, ¶21**:  The facts alleged in this paragraph appear to come directly from an FBI 302 report of interview with TH, which was inconsistent with her trial testimony.  TH testified that she smoked marijuana with Moore and that Moore brought her 3 bags of cocaine worth $60.00 dollars.  Although, the defendant continues to dispute that testimony, Moore would point out that TH gave inconsistent testimony regarding drug use with Moore.  TH told the FBI that she did ecstacy and beans with Moore, however at trial TH denied ever making that statement.

10. **Page 8, ¶22**:  The defendant objects to Probation's conclusion that TH quit working for Blake when she eventually went into the Kelly Center for substance abuse treatment.  The trial testimony of both TH and EP was that TH left working for Blake to go out on her own so

4

she did not have to share monies earned.

11. **Page 8, ¶24**:  Although, the defendant acknowledges Heaven Siegel testified that Moore answer calls for her, the defendant does not agree with Probation's conclusion that "all Siegel's ads were posted with Moore's telephone number.  The defendant also objects to Probation's conclusion that Moore answered Siegel's first call and negotiated with the "john" for an out call at the man's home in Wellington and that Siegel went out every night and worked for Moore after working at Jimmy Johns during the day.  Ms. Siegel did not testify to these facts at the trial.

12. **Page 9, ¶25**:  The defendant objects to Probation's conclusion that Moore provided Xanax at no charge and that "thereafter, Moore began operating Diamond Dolls Escorts".  No evidence was presented at trial to establish either fact.

13. **Page 9, ¶26**:  The defendant objects to Probation's conclusion that Siegel told Moore that EP was sixteen years old.  Siegel's trial testimony was that she mentioned to Mr. Blake how old EP was.  According to Siegel's trial testimony, Moore was not part of that conversation.

14. **Page 9, ¶27**:  The defendant objects to Probation's conclusion that Moore asked Trejo to work for her and Blake after learning of Trejo's arrest in Miami for prostitution.  This is inconsistent with Trejo's trial testimony.  Trejo testified at trial that she approached both Blake and Moore about the escort business.  Trejo also testified that she worked "with" Blake and Moore not "for" them as stated by Probation.  Also, Trejo never testified at trial that "Moore explained that she and Blake paid for half of the hotel rooms and that Trejo would have to pay Moore and Blake half of the money earned from each prostitution call".  Trejo also never

testified as to why she started posting ads or her finances as stated in the PSR.

15. **Page 9, ¶28**: Moore does acknowledges that Trejo testified she told Moore TH was not 18. However, Trejo also testified that Moore's response was that she (Moore) thought TH was 18. The defendant also objects to Probation's conclusion that Trejo told Moore EP was 16. This was not a fact proven at trial.

16. **Page 9-10, ¶29, 30, 31**: The defendant objects to the inclusion within the offense conduct portion of the PSR any facts contained in paragraphs 29,30,31, as these paragraphs are irrelevant to the counts of conviction. The facts alleged by Probation were subject to the Court granting a Rule 29 motion on all counts listing Kimberly Tompkins as a victim. It should be noted, Kimberly Tompkins testified at trial that she did not know Moore. The evidence at trial failed to prove coercion and all coercion counts resulted in judgements of acquittal. Michelle LNU, was not an alleged victim in the indictment and any information regarding Michelle is irrelevant. Chris Coleman was not an alleged co-conspirator and was not a witness. Coleman was interviewed by the government and denied any wrong doing related to this case.

17. **Page 10, ¶32**: Moore objects to the inclusion of these facts in the PSR as the KC counts similarly were subject to a Rule 29 and not relevant to the crime of conviction. The defendant also objects to Probation's conclusion that Cashwell was successful in her sobriety until she met Moore. There was no evidence presented at trial that Moore had any dealings with Cashwell other than a first meeting where photos were taken. There was no trial testimony that Moore effected Cashwell's sobriety by providing her with drugs or any controlled substances. It should be noted, that Cashwell also testified that Moore did not have any contact with the girls at the townhouse.

18. **Page 10, ¶33**:   The defendant objects to the inclusion of the facts contained in paragraph 33.  The defendant also objects to Probation's conclusion that Cashwell and Tompkins had no place to go after being kicked out of CARP.  The trial testimony proved that both KC & KT had contact with their families, boyfriends and other friends after being kicked out of CARP.  The trial testimony showed that the families of both KC & KT were supportive through their struggles with drugs and their problems with the legal system.  There was testimony proved the families appeared in court on behalf of both KC and KT.  The evidence also showed continued phone communication with their families and certain text messages showed that Cashwell left the townhouse on more than one occasion and was staying with her boyfriend or her family during different periods of the alleged conspiracy.

19. **Page 11, ¶34**:   The defendant objects to the inclusion within the offense conduct the facts contained within paragraph 34, as these facts were subject to a Rule 29 and not relevant to the crime of conviction.  The defendant also objects to the facts related to Wayne and Bug and their role in the escort business.  Neither Wayne nor Bug testified at trial and the facts contained in this paragraph were not proven at trial.  Moore also objects to Probation's conclusion that it was understood that the only way a person could stay at the townhouse was to continue to engage in prostitution.  The trial testimony was inconsistent with this finding.

II.     **Role Assessment:**

20. **Page 11, ¶38**: Ms. Moore objects to Probation's conclusion that the defendant's are equally culpable because they jointly ran a prostitution business.[2]  Moore also objects to

---

[2]At the January 17, 2014 hearing regarding Ms. Moore's bond, cross examination of the case agent included whether the government believed that Mr. Blake was more culpable or responsible for the activities surrounding the prostitution business.  The case agent testified that, "Mr. Blake had a larger

Probation's conclusion that she was an organizer or leader of criminal activity involving 5 or more persons or was extensive resulting in a 4 level enhancement pursuant to U.S.S.G. § 3B1.1(a). Moore believes her participation is less than that of her co-defendant and not one of an organizer, leader, supervisor or manager.

Heaven Siegel was the only witness to testifying that Moore gave her a phone number to call if Siegel was interested in making money. There was no other evidence presented at trial that Moore recruited girls for the business. EP testified that she met Blake through means unrelated to Moore, and both EP and TH testified that EP introduced TH to Mr. Blake when she began working as an escort. The trial evidence proved Ms. Moore did not recruit either of the minors for participation in any unlawful sexual activity. Ms. Trejo testified that she approached Moore and Blake to work with them and KC and KT testified that Moore had no involvement with the girls at the townhouse. Other than the testimony of Heaven Siegel, there was nothing presented at trial that Moore's role was equally as culpable as Mr. Blake or one that can be viewed as a supervisor, leader, organizer or manager as Probation concludes.

There was no testimony presented that Moore directed the activities of girls who worked in the escort business. Probation agrees that Moore had no involvement with any of the girls at the townhouse. EP testified she saw Moore approximately 20 minutes over a years period. TH testified that she saw Moore maybe 2-3 times a month. There was no testimony that Moore directed the activities of any of the girls working in the business. At best, the trial evidence

---

role with the organization and facilitating prostitution but Ms. Moore was certainly involved as well". (See Audio Recording of Hearing [DE:116]at 1:42:40-1:43:20). Ms. Moore believes, not only does the trial testimony proves she played a lesser role in this case, but the previous testimony of the case agent clearly establishes different roles and levels of responsibility among the defendants.

suggested Moore answered phone calls from clients, took photographs of certain girls and posted those photos in advertisements on the internet. All things that all other girls did for themselves and for others.

Moore objects to Probation's conclusion that she provided Xanax at no charge. The only girl who testified to receiving drugs from Moore was TH and her testimony was substantially inconsistent with her previous statements to the FBI.

21. **Page 12, ¶39**: The defendant objects to Probation's conclusion that several prostitutes worked at the direction of Moore. Probation concludes that Trejo, Seigel, Tompkins, Fisher and Cashwell worked at the direction of Moore. No testimony was presented at trial for this conclusion. Further, none of the individuals listed are minors and none were alleged co-conspirators in the crimes of conviction or substantive counts of Trafficking in Minors for Sex, which Moore is to be sentenced.

22. **Page 12, ¶40**: The defendant objects to Probation's conclusion that Bug and Wayne collected money, provided security or watched cameras at the townhouse at the direction of Moore. There was no evidence presented to suggest Moore had any involvement with Bug or Wayne or that either worked at the direction of Moore. In fact, the evidence established that Moore did not have contact at all with those at the townhouse.

III.   **Offense Level Computation**:

As an initial matter, the defendant agrees that the U.S.S.G. § 2G1.3(a)(2), provides a base offense level of 30 for a defendant who has been convicted under 18 U.S.C. § 1591(b)(2). The defendant does however object to the following enhancement recommended by the Probation Department;

23. **¶47 & 56 - U.S.S.G. § 2G1.3(b)(2)(B):**
    **[Care, Custody and Control]**

The defendant objects to Probation's conclusion that because the minors were in the custody, care, or supervisory control of the defendant, a 2 level enhancement is appropriate pursuant to U.S.S.G. § 2G1.3(b)(1)(B).

Application Note 2(A), provides guidance for those individuals intended for this enhancement. Although the guidelines describe section (b)(1) as having broad application, the application note makes clear it is intended for those individuals who are "entrusted" with the minor, either temporarily or permanently. For example; a teacher, day care provider, baby sitter or other temporary caretakers. When seeking this enhancement, the application note instructs that the court should look to the actual relationship that existed between the defendant and the minor. Ms. Moore does not meet the intent of this enhancement, nor did the trial testimony prove a relationship that would warrant an enhancement for having custody or control of either TH or EP.

The trial provided little evidence of any relationship between either of the two minors and Moore. Most telling was EP's testimony that she spent approximately 20 minutes with Ms. Moore over more than a years period. EP further testified that she had little or no contact with Moore during the course of the conspiracy. TH testified that she saw Moore 2-3 times a month during the 5 months TH alleges she participated in this conspiracy. There was no evidence presented that Moore had the type of relationship that would satisfy the purpose and intent of this enhancement. Similarly, there was no evidence that Ms. Moore was "entrusted" with the care or supervision of either of the minor victims. Therefore, this 2 level enhancement is not warranted.

24. **¶48 & 57 - U.S.S.G. § 2G1.3(b)(2)(B)**:
    **[Undue Influence]**

The Defendant objects to Probation's conclusion that Moore unduly influenced a minor to engage in prohibited sexual conduct resulting in a 2 level enhancement pursuant to U.S.S.G. § 2G1.3(b)(2)(B). Moore maintains that she did not coerce, threaten, force, or persuade either minor victim to engage in prohibited sexual conduct.

United States Sentencing Guideline § 2G1.3(b)(2)(B) requires a two-level enhancement if the district court finds that the defendant "unduly influenced a minor to engage in prohibited sexual conduct." *United States v. Goldberg*, —F.App'x.—, 2014WL6480297 (11th Cir. 2014). In determining whether to apply the enhancement, the district court "should closely consider the facts of the case to determine whether [the defendant's] influence over the minor compromised the voluntariness of the minor's behavior." *Id*. (See also USSG § 2G1.3, comment. n. 3(B)). To assess whether the defendant's conduct constitutes undue influence, "the district court may look to a variety of factors, including whether the defendant displays an abuse of superior knowledge, influence and resources." *Id*., (See also *United States v. Panfil*, 338 F.3d 1299, 1303 (11th Cir.2003) (per curiam) (citation omitted)); USSG § 2G1.3, comment. n. 3(B).

This enhancement is not appropriate in our case because the evidence proved Moore's participation did not unduly influence either minor's behavior rendering either minor's involvement involuntary. The trial testimony proved that EP had little to no involvement with Ms. Moore. The only fact EP testified to with respect to Moore's participation is that Moore may have taken a pictures of her the first time they met at the Tiffany Lakes apartment. Other than that, EP had no involvement with Moore and certainly was not unduly influenced by the

11

participation of Moore. The Court should also consider EP's testimony that she did not work for Blake. EP was clear that she engaged in prostitution or otherwise prohibited sexual conduct voluntarily and for herself. EP was clear that she knew full well what she was doing and engaged in prostitution activity when she needed money. There was no testimony presented that EP was unduly influenced to engage in prohibited sexual activity by the participation of Moore.

Similarly, there was no evidence presented at trial that Moore unduly influenced TH to engage in prohibited sexual conduct requiring a 2 level enhancement. TH testified that most of her involvement was with Mr. Blake and had limited contact with Moore, approximately 2-3 times per month. TH described at trial that Moore took photos and answered calls. There was no testimony presented by the government that Moore exploited or abused a superior knowledge, influence or resources in an effort to compromise TH's participation in commercial sex acts, thus rendering TH's participation involuntary. There was nothing presented by the government to suggest TH's behavior was compromised by Moore's conduct rendering TH's involvement in prohibited sexual conduct involuntary.

The government cites to *United States v. Jones*, 546 F.App'x. 946 (11th Cir. 2013), and it's holding that the Court did not err in applying the 2 level enhancement for undue influence. (See Govt's DE:287,p.6). The *Jones* Court found that the record supported the Court's finding that Jones's activities compromised the voluntariness of the minors' behavior. *Jones*, 546 F.App'x. at 948. The *Jones* case is distinguishable and involves significantly different facts than our case. Specifically, the *Jones* Court stated, "Jones used affection, control, and physical violence to influence the minors to work for him, and the district judge did not err in finding that his actions compromised the voluntariness of the minors' actions." *Id*. at p.948. No such facts

were presented in our case.

### 25.  ¶49 & 58 – U.S.S.G. 2G1.3(b)(3)(B): [Use of a Computer or Interactive Device]

Ms. Moore objects to Probation's conclusion that a 2 level enhancement is warranted for the use of a computer or an interactive computer device to, entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor, pursuant to U.S.S.G. § 2G1.3(b)(3)(B).

According to U.S.S.G. § 2G1.3(b)(3)(B), a district court must apply a two-level increase to a defendant's offense level "[i]f the offense involved the use of a computer or an interactive computer service to ... entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor." *See U.S.S.G. § 2G1.3(b)(3)(B)*. This guideline section is inconsistent with guideline's application notes. Application Note 4 to § 2G1.3 explains that "[s]ubsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor." *See U.S.S.G. § 2G1.3, comment. (n.4)*.

In *United States v. Madkins*, 390 F. App'x 849 (11th Cir. 2010), the Eleventh Circuit acknowledged the inconsistency of the guideline with application note 4. In *Madkins*, the Eleventh Circuit acknowledged the persuasive argument that application note 4, is inconsistent with the plain wording of section 2G1.3(b)(3)(B). The Eleventh Circuit said, "arguably the district court erred in applying this two-level enhancement. Madkins placed ads on Craig's List for A.L. and M.M.'s services, but nothing in the record suggests, as the commentary requires, that Madkins used a computer or interactive computer service to communicate directly with A.L. and

13

M.M. or with a person who exercised care or custody of them. *Id.* at 852.

The Eleventh Circuit, however chose not to decide whether the application note was inconsistent with the guideline. The Court stated, "we need not decide whether the commentary is inconsistent with or a plainly erroneous reading of the guideline.....Madkins has not shown that this error affected his substantial rights. Nothing in the record suggests that the district court would have imposed a different sentence absent this enhancement. At most, the impact of any revision to Madkins's guideline range is speculative, and Madkin cannot carry his burden to show prejudice or a miscarriage of justice." *Id*. at 852; See also *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir.2005). At Madkins's sentencing the district court explained, "that Madkins deserved a 50–year sentence on account of his manipulative and predatorial conduct toward A.L. and M.M., the irreparable harm he had caused to the girls and their families, his criminal history, and his attempt to suborn perjury, among other factors." *Madkins v. U.S.*, 2014 WL 4417849, M.D.Fla., September 08, 2014. On appeal, the Eleventh Circuit explained that, Madkins qualified for a 50 year sentence with or without the computer enhancement and that there was nothing in the record to suggest that the trial court would have sentenced him any differently even without the enhancement. *Id*. at 5. Thus, the Court affirmed Madkins's sentence.

Our case appears to be one where the application of the enhancement will affect the substantial rights of the defendant. There was nothing exceptional presented at trial that would otherwise require such a significant sentence as Madkin received, therefore the application of the sentencing guidelines and enhancement will have meaning.

**26. ¶50 & 59 - U.S.S.G. 2G1.3(a)(3) or (a)(4):**
**[Commercial Sex Act]**

The defendant objects to Probation's conclusion that a 2 level upward adjustment is warranted because the offense involved a commercial sex act. The Court should reject this recommendation because applying that enhancement would constitute impermissible double counting. It is an element of the offense that the defendant caused the victims to engage in commercial sex acts. Therefore, that harm has been fully accounted for in the base offense level. Impermissible double counting occurs....when one part of the guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the guidelines. *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999). Subsection 2G1.3(b)(4) was added to section 2G1.3 in 2007 by Amendment 701. The Sentencing Commission explained the intended ambit of the enhancement as follows:

> First, every conviction under 18 USC 1591, necessarily involves a commercial sex act. With the base offense levels being determined based on the statute of conviction, the amendment clarifies that section 2G1.3(b)(4)(B), which provides a 2 level enhancement if the offense involved a commercial sex act, does not apply if the defendant is convicted under 18 USC 1591. The limitation on application of subsection (b)(4)(B) avoids unwarranted double counting.
> United States Sentencing Guidelines Manual, Appendix C.

In as much as the Sentencing Commission expressly did not intend for the enhancement for commercial sex act to apply to a conviction under 18 USC 1591, for the correct reason that to do so would constitute impermissible double counting, the Court should reject this recommendation and deny the enhancement under this section.

15

26. **¶52 & 61 - U.S.S.G. § 3B1.1(a):**
**[4 levels for Role]**

The defendant disagrees with Probation's conclusion that Moore was a leader or organizer of criminal activity that involved 5 or more participants or was otherwise extensive, therefore adding an additional 4 levels pursuant to U.S.S.G. § 3B1.1(a). It is well settled law that determination of a defendant's role in the offense is restricted to the defendant's role in "the offense(s) of conviction;" that it is improper to consider the defendant's role in other conduct, particularly acquitted conduct. *United States v. Rodgers*, 951 F.2d 1120 (11th Cir. 1992). A participant is defined in the guidelines as a person who is criminally responsible for the commission of the offense of conviction. U.S.S.G. § 3B1.1, Application Note 1. The minors, who are the subject of the crime to which the defendant is to be sentenced, are victims not participants as defined by the guidelines. There were no other participants for the crimes in which the defendant is to be sentence and certainly not 5 or more where Moore was a leader or organizer to warrant a 4 level enhancement.

Moore believes the trial testimony proves she was a minor participant in the criminal activity that warrants a two level downward adjustment of her offense level. *U.S.S.G. § 3B1.2(b); See also, United States v. Rodriquez de Varon*, 175 F.3d 930 (11th Cir.1999).

27. **¶68 - U.S.S.G. 4B1.5(b)(1):**
**[Chapter 4, Enhancement]**

The PSR correctly calls for a 2 level upward adjustment through "grouping" on the basis that the defendant was convicted of Sex Trafficking two minors. The PSR then redundantly suggests at paragraph 68 that there should be another 5 level upward adjustment on the basis that the Sex Trafficking of two minors amounted to "engagement in a pattern of activity involving

prohibited sexual conduct." There is no pattern beyond the conduct that gave rise to the upward adjustment for grouping of the two offenses. Leaving aside that a pattern is usually more than two and that normal reading of pattern is best supported by an enhancement when there are two predicate, the application of this enhancement in addition to the grouping enhancement amounts to double counting of the exact same harm. *United States v. Rothenberg*, 601 F.3d 621, 624 n.4 (11th Cir. 2010). Impermissible double counting occurs....when one part of the guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the guidelines. *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999). Therefore, in light of the 2 level grouping enhancement, the defendant objects to Probation's finding that the defendant participated in a pattern of activity involving prohibited sexual conduct, and that a 5 level increase pursuant to U.S.S.G. § 4B1.5(b)(1) is warranted.

**IV.**   **Substance Abuse:**

The defendant corrects the following statements contained in her PSR regarding her substance abuse. The following correction have no impact on the defendant's guideline calculation.

28. **Paragraph 98**:

Probation is correct that the defendant began drinking alcohol in 2000 at age 12, and her use of alcohol increased over the years. However, between 2006-2008, the defendant drank alcohol occasionally not on a daily basis as stated in the PSR. Also, the defendant believes she drank alcohol 1-3 times per month at the time of her arrest, not 4-5 times per week as stated in the PSR.

29. **Paragraph 100**:

Although Probation is correct that the defendant has used cocaine in the past, the defendant believes she stopped using cocaine in 2002.

30. **Paragraph 101**:

The defendant has used LSD approximately 5 times between 2000 and 2001.

31. **Paragraph 102**:

Although Probation is correct that the defendant has used MDMA, she has taken MDMA approximately 10 times in her life which occurred sporadically between 2002 and 2010.

32. **Paragraph 115**:

The defendant believes that she was current with her taxes up until her incarceration in February 2013.

Respectfully submitted;
*s/; Peter T. Patanzo*
Benjamin, Aaronson, Edinger & Patanzo, PA
1 Financial Plaza, suite 1615
Fort Lauderdale, Florida 33394
(954) 779-1700 phone
(954) 779-1771 fax
ppatanzo@bellsouth.net
Counsel for Tara Jo Moore

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been uploaded to the Court's electronic filing system EM / ECF, this 21nd day of February, 2015 and served on all those associated with the electronic service list.

*s/; Peter T. Patanzo*
Peter T. Patanzo, Esq.